1
2
3
4

Frank Liberatore (SBN: 119976)
JACKSON LEWIS LLP
5000 Birch Street, Suite 4800
Newport Beach, California 92660
Telephone: (949) 885-1360
Facsimile: (949) 885-1380
E-mail: liberatf@jacksonlewis.com

5
6
7
8
9

Nicky Jatana (SBN: 197682)
Talya Z. Friedman (SBN: 216158)
JACKSON LEWIS LLP
725 S. Figueroa Street, Suite 2500
Los Angeles, California 90017
Telephone: (213) 689-0404
Facsimile: (213) 689-0430
E-mail: jatanan@jacksonlewis.com
            friedmat@jacksonlewis.com

10

Attorneys for Defendants
PARSONS BRINCKERHOFF, INC. and ALLTECH, INC.

11

UNITED STATES DISTRICT COURT

12

CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES

13
14
15
16

RONALD HOUSTON, on behalf of
himself and all others similarly
situated; and JOSEPH
LOMASCOLO, on behalf of himself
and all others similarly situated,

        Plaintiffs,

17

        v.

18
19
20
21
22

URS CORPORATIVE, DEWBERRY
& DAVIS LLC, PARTNERSHIP
FOR RESPONSE AND RECOVERY
(PaRR), PARSONS
BRINCKERHOFF, INC., and,
ALLTECH, INC.

        Defendants.

23
24
25
26
27
28

**Case No. CV 07357 AHM (PJWx)**

**DECLARATION OF HUGH INGLIS IN
SUPPORT OF DEFENDANTS' PARSONS
BRINCKERHOFF INC.'S AND
ALLTECH, INC.'S MOTION TO
DISMISS OR TO TRANSFER VENUE**

Date:        **February 11, 2008**
Time:        **10:00 a.m.**
Ctrm:        **14**
Judge:       **Honorable A. Howard
             Matz**

**Complaint Filed:** 11/03/07
**Trial Date:**       **None**

1

Case No. CV 07357 AHM (PJWx)

Declaration Of Hugh Inglis In Support Of Defendants' Parsons
Brinckerhoff Inc.'s And Alltech, Inc.'s Motion To Dismiss Or To
Transfer Venue

I, HUGH INGLIS, declare and state as follows:

1.     I am employed by ALLTECH, Inc. ("ALLTECH") in the position of Project Manager and Senior Vice President.  I have been employed by ALLTECH for about 10 years.

2.     I make this Declaration of my own personal knowledge or upon review of records or other documents, and if called upon as a witness, I would competently testify thereto.

3.     ALLTECH is a wholly-owned subsidiary of Parsons Brinckerhoff Inc.[1] (Parsons Brinckerhoff").  Unlike other subsidiaries of Parsons Brinckerhoff, ALLTECH does not perform professional services.

4.     Parsons Brinckerhoff and ALLTECH have no corporate relationship to Defendants URS Corporation, Dewberry & Davis LLC, or Partnership For Response And Recovery (PaRR).   Parsons Brinckerhoff and ALLTECH are separate entities from the remaining Defendants and do not share with them common ownership, benefits, facilities or financial resources.

5.     Pursuant to a contract with The Federal Emergency Management Agency ("FEMA") ALLTECH retains independent contractors to inspect residences damaged in "disasters" declared by the President.  This program is part of FEMA's housing disaster program, which provides federal housing assistance to homeowners and renters.

6.     Parsons Brinckerhoff is not a party to the contract with FEMA, only ALLTECH.  A true and correct copy of the cover sheet to the contract between FEMA and ALLTECH is attached as **Exhibit A**.

---

[1] Subsidiaries of Parsons Brinckerhoff generally provide strategic consulting, planning, engineering, and program and construction management services to public and private sector clients.

2

7.   Pursuant to the FEMA agreement with ALLTECH, inspections are conducted of residential properties, not business or commercial properties.

8.   ALLTECH does not use employees to conduct these inspections. Rather, it retains independent contractors pursuant to independent contractor agreements. A true and correct copy of a sample independent contractor agreement is attached as **Exhibit B**. ALLTECH's independent contractor agreements are prepared and issued at its Virginia offices.

9.   ALLTECH maintains its headquarters offices in Herndon, Virginia, with the FEMA-related contract being serviced from ALLTECH's office in Winchester, Virginia.

10.   ALLTECH does not maintain an ongoing office in California.

11.   During the past three years, ALLTECH has provided services to FEMA at a number of disaster sites across the country. Attached, as **Exhibit C**, is a true and correct copy of a chart compiled from business records of the FEMA disaster sites at which ALLTECH rendered services. Only one of the 39 sites was located in California; it was not in the Central District of California.

12.   At the disaster site in California at which ALLTECH arranged for services to be rendered to FEMA in 2006, 3,967 inspections were conducted. That is only 0.32% (or less than 1/3 of 1%) of the total number of inspections done during the past three years. See Exhibit C.

13.   Further, only 21 (2.4% of the total) inspectors rendered inspection services on the FEMA disaster site in California in 2006. In contrast, 868 inspectors rendered services during that period of time at FEMA disaster sites outside California. (The number references the total of all of the inspectors deployed during 2006. Some of the inspectors in the count may have been deployed at multiple disasters sites. The total for each site makes up the total for the year.)

3

Case No. CV 07357 AHM (PJWx)

Declaration Of Hugh Inglis In Support Of Defendants' Parsons Brinckerhoff Inc.'s And Alltech, Inc.'s Motion To Dismiss Or To Transfer Venue

14. When an inspector accepts an assignment as an independent contractor, he or she provides his or her own tape measure, vehicle, flashlights, boots, protective clothing, tools, cell phone and other equipment. They pay for their own on-site transportation, living (including hotel or lodging costs), food and other costs. No per diem payment is made.

15. Inspectors can hire or retain their own employees or subcontractors to serve as drivers, guides or perform other functions (e.g., clerical work) or other services.

16. Inspectors who render services at a disaster site do not perform any services for ALLTECH as an "employee" at other times. They do not perform dual roles in any way.

17. The recent disaster site involving the fires in Southern California was not assigned to ALLTECH by FEMA. The sole FEMA disaster site assigned to ALLTECH in California during the past three years was in Northern California, in and around Sonoma, Napa, and Marin counties in Northern California.

18. ALLTECH's corporate offices, records and officials are located in Virginia, not California.

19. With respect to the disaster sites at which services were rendered to FEMA, records and key personnel of ALLTECH are located at the Winchester office of Alltech.

20. During the three-year period preceding the date this suit was filed, Ronald Houston never was an employee of ALLTECH. In fact, review of the Company's records does not reflect any payment to Ronald Houston, which would include any payment pursuant to a 1099 tax form during that three-year period.

21. Plaintiff Joseph Lomascolo rendered services at FEMA disaster sites as an independent contractor. According to the Company's records, he conducted residential

4

Declaration Of Hugh Inglis In Support Of Defendants' Parsons Brinckerhoff Inc.'s And Alltech, Inc.'s Motion To Dismiss Or To Transfer Venue

appraisals at the following FEMA disaster sites: Louisiana, Massachusetts and Pennsylvania. None were located in California.

22. In the Complaint, Joseph Lomascolo alleges that he is a resident of Shawanese, Pennsylvania, not California (and certainly not within the Central District of California). <u>See</u> **Exhibit D** (Complaint, para. 8). Joseph Lomascolo does not allege that he was "employed" by Parsons Brinckerhoff or by ALLTECH in California, especially within the Central District of California. <u>See, e.g.</u>, Exhibit D (Complaint, para. 8).

23. Plaintiff Ronald Houston alleges that he is a resident of the County of Los Angeles, in the State of California, but never alleges that he was "employed" by or provided services to Parsons Brinckerhoff or by ALLTECH. <u>See, e.g.</u>, Exhibit D (Complaint, para. 7). To the contrary, Plaintiff Houston alleges only that he purportedly was "employed" by Defendants URS Corporation, Dewberry & Davis LLC and Partnership For Response & Recovery.

24. While a general accusation is made in the Complaint with respect to ALLTECH providing "housing inspector personnel at any time and at all national disaster sites in the United States and its territories, including the Central District of California," there is no factual allegation of any FEMA disaster site in the Central District of California at which ALLTECH was contracted to provide services.

25. ALLTECH did not provide services upon or with respect to any "disaster sites" in the Central District of California within the three year period preceding filing of suit herein.

26. Review of data in ALLTECH's records indicates that inspectors who rendered the services as independent contractors upon FEMA projects, reside in a great many states across the country. For inspectors who rendered services during 2005, 2006 and 2007, relatively few (only 5.2%) resided in California. Attached, as **Exhibit E**, is a

5

Declaration Of Hugh Inglis In Support Of Defendants' Parsons Brinckerhoff Inc.'s And Alltech, Inc.'s Motion To Dismiss Or To Transfer Venue

1 true and correct copy of a chart compiled from business records reflecting the last known
2 residences of those inspectors. The largest number resided in Texas (24%), with the next
3 largest number residing in Florida (13.7%). If a two-year limitation period applied, the
4 largest number of inspectors (26%) resided in Texas. The second largest group lived in
5 Florida and were 14.4% of the total number of inspectors. During the three-year period,
6 inspectors living in Texas and Florida conducted 36.1% of the inspections. During the
7 preceding two-year period, inspectors residing in Texas and Florida conducted 39.1% of
8 the inspectors. Inspectors residing in California conducted far fewer inspections (and did
9 so largely outside California).

10     27. Few of the total number of inspections upon FEMA disaster sites were
11 performed by inspectors who were known to reside in California. See Exhibit E.

12     28. ALLTECH does not maintain employees or an office in California to service
13 the FEMA contract for residential appraisals at FEMA disaster sites. The services
14 rendered in Northern California (at the Napa, Sonoma, Marin disaster in 2006) are
15 coordinated from the Virginia office of ALLTECH.

16     29. When requesting payment for supplies delivered or services rendered under
17 the FEMA contract, ALLTECH prepares an invoice for such payment in its Virginia
18 offices and submits that invoice to FEMA. As required by the FEMA contract,
19 ALLTECH submits such invoices to the FEMA Office of Financial Management located
20 in Bluemont, Virginia. Bluemont, Virginia is located in Loudoun County, Virginia,
21 which is within the jurisdiction of the Eastern District of Virginia.

22     30. All of the FEMA personnel with whom ALLTECH interacts are located at
23 the Winchester, Virginia; Bluemont, Virginia or Washington, D.C. offices of FEMA.

24

25

26

27

28

6

Case No. CV 07357 AHM (PJWx)

Declaration Of Hugh Inglis In Support Of Defendants' Parsons Brinckerhoff Inc.'s And Alltech, Inc.'s Motion To Dismiss Or To Transfer Venue

31. ALLTECH's current or former personnel responsible for managing ALLTECH's FEMA contracts, and for retaining independent contractors to service those contracts, report to ALLTECH's offices in Virginia.

32. It would be wholly inconvenient for witnesses of ALLTECH and the FEMA witnesses to travel to Los Angeles for purposes of testifying at depositions or hearings in this case. It would be far more convenient for them to do so in the Eastern District of Virginia. (The FEMA witnesses could not be compelled by subpoena to travel across the country to do so.)

33. All of the documents maintained by ALLTECH in connection with this case are located either at its facilities in Virginia, or at Parsons Brinckerhoff's office in New York City, including the independent contractor agreements expressly governed by the law of the Commonwealth of Virginia; documents relating to the retention of independent contractors; documents relating to the services performed by the independent contractors; documents relating to FEMA contracts; documents relating to the disasters serviced by ALLTECH and the independent contractors; and, invoices relating to payment of the independent contractors.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 3rd day of January ___, 2008, at Orland, Maine.


HUGH INGLIS

Case No. CV 07357 AHM (PJWx)

Declaration Of Hugh Inglis In Support Of Defendants' Parsons Brinckerhoff Inc.'s And Alltech, Inc.'s Motion To Dismiss Or To Transfer Venue

# EXHIBIT A

# **EXHIBIT A**

| AWARD/CONTRACT | 1 THIS CONTRACT IS RATED ORDER UNDER DPAS (15 CFR 350) | RATING N/A | PAGE OF PAGES 1 |
|---|---|---|---|

| 2 CONTRACT NO (Proc. Inst. Ident) HSFEHQ-D7-D-0225 | 3 EFFECTIVE DATE See Block 20 C | 4 REQUISITION/PURCHASE REQUEST/PROJECT NO N/A |
|---|---|---|

| 5 ISSUED BY | CODE | 7022 | 6 ADMINISTERED BY (If other than Item 5) | CODE | 7022 |
|---|---|---|---|---|---|

DHS/Federal Emergency Management Agency
Acquisitions Procurements & Grants
Response and Logistics Branch
500 C Street, S.W., PP 5th Floor
Washington DC 20472

Helen Housand
202-646-2658
Helen.housand@dhs.gov

**7. NAME AND ADDRESS OF CONTRACTOR** (No., street, city, county, State and ZIP Code)

ALLTECH INC

465 SPRINGPARK PL

HERNDON VA 201705227

**8 DELIVERY**

☐ FOB ORIGIN  ☒ OTHER (See below)

**10 DISCOUNT FOR PROMPT PAYMENT**

N/A

**10 SUBMIT INVOICES** (4 copies unless otherwise specified) TO THE ADDRESS SHOWN IN

ITEM

BLOCK 12

| CODE 7022 | FACILITY CODE |
|---|---|

| 11 SHIP TO/MARK FOR CODE | 12. PAYMENT WILL BE MADE BY CODE 7022 |
|---|---|

DHS/Federal Emergency Management Agency
Attn: Michael Hockman (VA-NPSC)
Winchester Branch
P.O. Box 166
Berryville VA 22611

DHS/Federal Emergency Management Agency
Disaster Finance Center
Attn: Vendor Payments, Bldg 70B
P.O. Box 800
Berryville, VA 22611

| 13 AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION: | 14 ACCOUNTING AND APPROPRIATION DATA |
|---|---|
| ☐ 10 U.S.C. 2304(c)( )  ☐ 41 U.S.C. 253(c)( ) | |

| 15A. ITEM NO | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| | Housing Inspection Services Area Nationwide contract Base Period from April 1, 2007 through September 30, 2007, plus 4 one year option periods<br><br>The guaranteed minimum will be met by issuance of the first task order, which will be issued simultaneously with the contract. | | | | |

| | 15G. TOTAL AMOUNT OF CONTRACT | -0- |
|---|---|---|

**16. TABLE OF CONTENTS**

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| x | A | SOLICITATION/CONTRACT FORM | 3 | x | I | CONTRACT CLAUSES | 23 |
| x | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 4 | | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| x | C | DESCRIPTION/SPECS./WORK STATEMENT | 1 | x | J | LIST OF ATTACHMENTS | 191 |
| x | D | PACKAGING AND MARKING | 1 | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| x | E | INSPECTION AND ACCEPTANCE | 2 | | | REPRESENTATIONS, CERTIFICATIONS AND | |
| x | F | DELIVERIES OR PERFORMANCE | 4 | x | K | OTHER STATEMENTS OF OFFERORS | 1 |
| x | G | CONTRACT ADMINISTRATION DATA | 7 | | L | INSTRS., CONDS., AND NOTICES TO OFFEROR | |
| x | H | SPECIAL CONTRACT REQUIREMENTS | 9 | | M | EVALUATION FACTORS FOR AWARD | |

**CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE**

| 17 ☒ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return ___ 3 ___ copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein (Attachments are listed herein.) | 18 ☐ AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number _____ including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above andon any condition sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation andyour offer, and (b) this award/contract. No further contractual document is necessary |
|---|---|

| 19A. NAME AND TITLE OF SIGNER (Type or print) | 20A. NAME OF CONTRACTING OFFICER |
|---|---|
| Hugh J. Inglis Sr. Vice President, Alltech, Inc | Chandra G. Lewis Contracting Officer |
| 19B NAME OF CONTRACTOR | 20B UNITED STATES OF AMERICA |
| BY (Signature of person authorized to sign) | BY (Signature of Contracting Officer) |
| 19C DATE SIGNED 3/30/07 | 20C DATE SIGNED 3/30/07 |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 26 (REV. 12/2002)
Prescribed by GSA - FAR (48 CFR) 53.214(a)



U.S. **Department of Homeland Security**
500 C Street, SW
Washington, DC 20472

**FEMA**

March 30, 2007

Hugh J. Inglis.
Senior Vice President/Project Director
Alltech, Inc. (a Parsons Brinckerhoff Company)
465 Spring Park Place
Herndon, VA 20170

Reference: Contract Number HSFEHQ-07-D-0225

Dear Mr. Inglis:

Enclosed is referenced contract for your review and signature by your authorized official.
Request you return three (3) signed originals by 5:00 p.m. eastern time March 30, 2007.
Upon execution by the FEMA Contracting Officer, a fully executed original will be
returned to you for your records.

Our mailing/delivery address is as follows:

DHS/Federal Emergency Management Agency
Acquisition Procurement and Grants
Attn: Chandra Lewis, Branch Chief, Response and Logistics
Patriots Plaza, 5th FL,, Room 503
500 C Street, S.W., Room 350
Washington, D. C. 20472

If your have any questions, or need additional information, please call me on (202) 646-
3118.

Sincerely,

*Chandra G. Lewis*

Chandra G. Lewis
Contracting Officer

Enclosures(s)

www.fema.gov

9

# EXHIBIT B

**EXHIBIT B**

## Independent Contractor Agreement

**Personal Information**

InspectorId: **17985**

| | |
|---|---|
| Name: | **Joseph Lomascolo** |
| SSN: | 222502603 |
| Address: | PO Box 218 Shawanese PA 18654 |
| Phone: | 570-639-2101 |
| Email: | insp17985@yahoo.com |

**Business Information**

Business Name: **Joseph John Lomascolo**

Business Type: Individual/Sole Proprietorship

Address       Po Box 218 Shawanese PA 18654

Tax Id/SSN:   222502603

Role:

**Disadvantaged Business Type(s)**:

**Registration**:

**2. INDEPENDENT CONTRACTOR RELATIONSHIP**
The parties agree and understand that the IC is an independent contractor, not an employee, of Client. Therefore, none of the ordinary rights and/or benefits of employment apply to the relationship between the parties. The parties also agree and understand the IC controls the means and methods of performance under this Agreement. Neither CLIENT, nor any of its representatives, has any right to direct, supervise or control either the means or methods of the IC's performance under this Agreement. Any written guidelines provided to the IC by CLIENT do not affect the IC's discretion to perform services under this Agreement independently, as discussed herein. IC agrees to provide his or her business card and/or copies of his or her business card to CLIENT on request. IC understands the IC is not doing the principal work of the employer.

**3. WORK TO BE PERFORMED**
CLIENT desires that IC perform, and IC agrees to perform work as described in attached Addendum or Addenda and Task Orders. IC understands and agrees that by signing this Agreement, CLIENT is not guaranteeing that any inspections will be assigned to IC, that all services to be furnished pursuant to this Agreement shall be ordered by issuance of Task Orders by CLIENT, and that this Agreement may be terminated by either party in accordance with Item 13 below.

**4. TERMS OF PAYMENT**
In consideration for the performance of services under the Agreement, CLIENT will pay IC for each properly completed and accepted inspection. The price per properly completed and accepted inspection will be stated within each **Task Order** presented to and accepted by the IC. Payment to IC for accepted inspections will be generated automatically at a defined interval based on an audit of the completed and accepted IC work in the CLIENT database. The IC will receive payment electronically or by check based on the audit results and Task Order pricing. IC will be provided supporting detail with each payment.

**5. REIMBURSEMENT OF EXPENSES**
Except as indicated in attached Addenda or Task Orders, no expenses will reimbursed to IC. The IC will be required to provide transportation as necessary at the job site for daily work requirements. IC will be further responsible for all expenses relating to food, lodging, local and long distance telephone calls, automobile, and miscellaneous expenses.

**6. EQUIPMENT, TOOLS, MATERIALS, OR SUPPLIES**
Except as otherwise stipulated in this Agreement, IC shall supply, at IC's sole expense, all equipment, tools, materials and supplies to accomplish the work agreed to be performed.

**7. INDEMNIFICATION**
IC agrees to indemnify and hold CLIENT harmless against any and all consequences or taxes, including penalties, fines or assessments, if any, which may arise from or relate to any service provided under this Agreement.

IC shall defend, indemnify, and hold CLIENT harmless from any and all claims, liabilities, losses, and expenses, including attorneys' fees and court costs, arising from any acts or omissions committed by IC or IC's employees, agents, or subcontractors including but not limited to, the IC's obligation to pay all necessary payroll and other taxes, during the performance of any duties under this Agreement.

**8. FEDERAL, STATE, AND LOCAL PAYROLL TAXES**

10

CLIENT shall neither withhold nor pay federal, state, or local income tax, or payroll tax of any kind, on behalf of IC or the employees of IC. IC shall not be treated as an employee with respect to the services performed hereunder for federal or state tax purposes.

**9. FRINGE BENEFITS**

Because IC is engaged in IC's own independent business, IC is not eligible for, and shall not participate in, any employer pension, health, or other fringe benefit plan, of the CLIENT.

**10. NOTICE TO IC REGARDING ITS TAX DUTIES AND LIABILITIES**

IC understands that IC is responsible to pay, according to law, IC's income taxes. If IC is not a corporation, IC further understands that IC may be liable for self-employment (social security) tax, to be paid by IC according to law.

**11. WORKERS' COMPENSATION AND COMMERCIAL GENERAL LIABILITY INSURANCE**

No workers' compensation insurance shall be obtained by CLIENT covering IC or the employees of IC. IC shall comply with the workers' compensation law concerning IC and the employees of IC, and shall provide to CLIENT a certificate of workers' compensation insurance, or, in the event IC has no legal obligation to maintain workers' compensation insurance, and IC does not maintain such insurance, IC shall provide some evidence of health insurance which would cover IC for any injury sustained by IC in the performances of services under this Agreement.

**12. TERM OF AGREEMENT**

This Agreement shall be effective as of the date first indicated above. This Agreement shall remain in effect until terminated by IC or CLIENT.

**13. TERMINATION**

Without cause, the IC or CLIENT may terminate this Agreement after giving 7 days written notice to the other party. The parties shall deal with each other in good faith during the 7-day period after notice of intent to terminate without cause.

**14. NON-WAIVER**

The failure of CLIENT to exercise any of its rights under this Agreement for a breach thereof shall not be deemed to be a waiver of such rights or a waiver of any subsequent breach.

**15. NO AUTHORITY TO BIND CLIENT**

IC has no authority to enter into contracts or agreements on behalf of CLIENT. This Agreement does not create a partnership between the parties.

**16. DECLARATION BY INDEPENDENT CONTRACTOR**

IC declares that IC has complied with all federal, state, and local laws regarding business permits and licenses that may be required to carry out the work to be performed under this Agreement.

**17. HOW NOTICES SHALL BE GIVEN**

Any notice given in connection with this Agreement shall be given by telephone or Telecopy and confirmed in writing and sent by first class US Mail to the other party at the address stated above.

**18. ASSIGNABILITY**

IC may not assign this Agreement, in whole or in part.

**19. ENTIRE AGREEMENT**

This Agreement, the Addenda hereto, and any Task Orders issued hereunder, contain the entire Agreement and understanding between the parties and supersedes all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matter hereof. This is an integrated document.

**20. CHOICE OF LAW**

Any dispute under this Agreement or related to this Agreement shall be decided in accordance with the laws of the Commonwealth of Virginia.

**21. ENTIRE AGREEMENT**

This is the entire Agreement of the parties and cannot be changed or modified orally.

**22. SEVERABILITY**

Should any provision, part or term of this Agreement be held to be invalid or unenforceable, the validity and enforceability of the remaining parts, terms and provisions shall not be affected thereby, and a suitable and equitable provision shall be substituted to carry out, so far as may be enforceable and valid, the intent and purpose of the invalid or unenforceable provision.

**23. CONFIDENTIAL INFORMATION**

IC agrees and understands that CLIENT develops and uses valuable technical and non-technical information that it regards as highly confidential and which it wishes to protect from any unauthorized use or disclosure. During the course of IC's performance under this Agreement, IC may have access to such confidential and trade secret information. IC agrees not to use or disclose such confidential and trade secret information during the term of this Agreement, or any extension thereof, or after the expiration of the Agreement, without first obtaining written authorization from CLIENT.

**24. COST AND FEES**

If any legal action arises under this Agreement or by reason of any asserted breach of this Agreement, the prevailing party shall be entitled to recovery of all costs and expenses, including reasonable attorneys' fees incurred as a result of such legal action.

**25. AMENDMENTS**

This Agreement may be supplemented, amended, or revised only in writing by agreement of the parties.

v2.0 Rev 9-24-07

☑
I accept the terms and conditions as outlined

Next

Signed by Joseph Lomascolo on 6/13/2006

# EXHIBIT C

# **EXHIBIT C**

| DSTR_NR | State | Inspector Count | Reg Count |
|---------|-------|-----------------|-----------|
| 1605 | AL | 333 | 93479 |
| 1636 | AR | 9 | 635 |
| 1628 | CA | 23 | 3957 |
| 1609 | FL | 796 | 181938 |
| 1679 | FL | 50 | 1173 |
| 1680 | FL | 7 | 234 |
| 1664 | HI | 15 | 3864 |
| 1633 | IL | 10 | 1095 |
| 1722 | IL | 11 | 1004 |
| 1729 | IL | 10 | 1567 |
| 1612 | IN | 6 | 569 |
| 1662 | IN | 31 | 5723 |
| 1699 | KS | 36 | 4232 |
| 1711 | KS | 30 | 3297 |
| 1617 | KY | 7 | 218 |
| 1603 | LA | 1393 | 398635 |
| 1607 | LA | 448 | 124692 |
| 1668 | LA | 30 | 3423 |
| 1685 | LA | 14 | 978 |
| 1642 | MA | 52 | 10027 |
| 1693 | ME | 27 | 2051 |
| 1717 | MN | 47 | 4626 |
| 1726 | ND | 5 | 174 |
| 1643 | NH | 34 | 5235 |
| 1695 | NH | 16 | 1729 |
| 1653 | NJ | 19 | 541 |
| 1694 | NJ | 116 | 14687 |
| 1690 | NM | 5 | 431 |
| 1670 | NY | 11 | 1131 |
| 1649 | PA | 135 | 10557 |
| 1634 | TN | 13 | 935 |
| 1606 | TX | 1369 | 324566 |
| 1624 | TX | 12 | 278 |
| 1658 | TX | 21 | 4889 |
| 1697 | TX | 15 | 1325 |
| 1709 | TX | 40 | 11960 |
| 1730 | TX | 14 | 1259 |
| 1719 | WI | 40 | 4148 |
| 1599 | WY | 3 | 167 |

13

# EXHIBIT D

# EXHIBIT D



WALTER J. LACK, SBN 57550
RICHARD P. KINNAN, SBN 123170
**ENGSTROM, LIPSCOMB & LACK**
10100 Santa Monica Blvd., 16th Fl.
Los Angeles, CA 90067
Tel: (310) 552-3800
Fax: (310) 552-9434

DANZ & GERBER
KARL GERBER, SBN 166003
13418 Ventura Blvd
Sherman Oaks, Ca 91423
(818) 783-7300

Attorneys for Individual and Representative PLAINTIFFS

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

RONALD HOUSTON, on behalf of himself and all others similarly situated; and JOSEPH LOMASCOLO, on behalf of himself and all others similarly situated,

        Plaintiffs,

  vs.

URS CORPORATION, DEWBERRY & DAVIS LLC, PARTNERSHIP FOR RESPONSE AND RECOVERY (PaRR), PARSONS BRINCKERHOFF, INC., and, ALLTECH, INC.

        Defendants.

CASE No.: CV 07-07357 AHM (PJWx)

**CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

    Individual and representative plaintiff, RONALD HOUSTON, on behalf of himself and all others similarly situated, and JOSEPH LOMASCOLO, on behalf of himself and all others similarly situated, allege as follows:

//

//

@PFDesktop\::ODMA/PCDOCS/ELL.HMDM/294114/1

1

**COMPLAINT**

14

## NATURE OF THE ACTION

1. This is a representative action (also known as a collective action) brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. for the illegal failure by Defendants to pay overtime wages to plaintiffs and the members of the Classes. Plaintiffs and the members of the Classes allege that they were wrongfully misclassified by the employer defendants as independent contractors pursuant to a common employment policy. In fact, Plaintiffs and the members of the Classes were non-exempt employees entitled to be paid overtime wages for all hours worked in excess of 40 hours per week. The Fair Labor Standards Act, 29 U.S.C. 216(b), expressly provides that an action to collect overtime wages under the FSLA may be brought by any one or more employees for and on behalf of himself and other employees similarly situated. The statute further provides that no employee shall be a party plaintiff to any 216(b) collective action unless and until he gives his consent in writing to become such a party and such consent is filed with the Court. A FLSA 216(b) action is separate and distinct from a Rule 23 class action.

2. At all relevant times Plaintiffs and the Class members were Federal Disaster Housing Inspectors working for companies who had contracted with the Federal Emergency Management Agency (FEMA) to provide FEMA with inspection personnel at any and all national disaster sites in the United States and its territories. Disasters where FEMA is deployed include earthquakes, fires, floods, terrorist attacks, hurricanes, landslides, and tornadoes, among others. FEMA provides on-the-ground support for disaster recovery, expertise and funding for rebuilding efforts, relief funds for individual citizens, and, in conjunction with the Small Business Administration, assists individuals and businesses with low interest loans.

3. Despite controlling how their inspectors, including Plaintiffs and the members of the Classes, conducted their housing inspection jobs, defendants classified their inspectors, including Plaintiffs and the members of the Classes, as independent contractors and paid them only a set amount for each inspection, and

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1                                 2

**COMPLAINT**

15

1  thus failed to pay the inspector Plaintiffs and members of the Classes overtime wages
2  for hours worked in excess of 40 hours per week. Plaintiffs and the members of the
3  Classes allege that they were misclassified as independent contractors rather than
4  employees, and further allege that they suffered substantial damages in the form of
5  lost overtime wages as they were not paid any overtime wages for the many hours
6  they were required to and did work each week in excess of 40 hours per week.

7    4.    The United States Internal Revenue Service has determined that disaster
8  housing inspectors are employees for federal tax purposes.

9  **JURISDICTION AND VENUE**

10    5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331
11  for all claims arising under the FLSA, 29 U.S.C. § 201, et seq., and pursuant to 28
12  U.S.C. § 1367 for all State law claims as they arise from a common nucleus of
13  operative facts and form part of the same case or controversy.

14    6.    Venue is appropriate in this Court because a substantial part of the
15  events leading to this claim arose in this district, and because the defendants are
16  subject to personal jurisdiction by the court in this district pursuant to 28 U.S.C. §
17  1391(c).

18  **PARTIES**

19    7.    Plaintiff, RONALD HOUSTON, was at all relevant times and is a
20  resident of the County of Los Angeles, State of California. At all relevant times
21  Plaintiff RONALD HOUSTON was employed by Defendants URS CORPORATION,
22  DEWBERRY & DAVIS LLC, PARTNERSHIP FOR RESPONSE & RECOVERY
23  as a Disaster Housing Inspector at national disaster sites in the United States and its
24  territories.

25    8.    Plaintiff, JOSEPH LOMASCOLO, was at all relevant times and is a
26  resident of Shawanese, State of Pennsylvania. At all relevant times Plaintiff JOSEPH
27  LOMASCOLO was employed by Defendants PARSONS BRINCKERHOFF, INC.
28  and ALLTECH, INC. as a Disaster Housing Inspector at national disaster sites in the

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1            3
**COMPLAINT**

1   United States and its territories.

2       9.      Plaintiffs are informed and believe and thereon allege that Defendant
3   URS CORPORATION ("URS") is a Delaware corporation with its principal place of
4   business located in California. URS does business throughout the United States and
5   in California, including the Central District of California. At all relevant times
6   Defendant URS CORPORATION operated under a contract with FEMA to provide
7   housing inspector personnel at any and all national disaster sites in the United States
8   and its territories, including the Central District of California.

9       10.     Plaintiffs are informed and believe and thereon allege that Defendant
10  DEWBERRY & DAVIS LLC ("DEWBERRY")is a Virginia corporation with its
11  principal place of business in Fairfax, Virginia. DEWBERRY does business
12  throughout the United States and in California, including the Central District of
13  California. At all relevant times Defendant DEWBERRY & DAVIS LLC operated
14  under a contract with FEMA to provide housing inspector personnel at any and all
15  national disaster sites in the United States and its territories, including the Central
16  District of California.

17      11.     Plaintiffs are informed and believe and thereon allege that Defendant
18  PARTNERSHIP FOR RESPONSE & RECOVERY ("PaRR") is a joint venture of
19  unknown business form created and operated by Defendant URS CORPORATION
20  and DEWBERRY & DAVIS to provide federal housing inspections for the FEMA.
21  PaRR does business throughout the United States and in California, including the
22  Central District of California. At all relevant times Defendant PARTNERSHIP FOR
23  RESPONSE & RECOVERY operated under a contract with FEMA to provide
24  housing inspector personnel at any and all national disaster sites in the United States
25  and its territories, including the Central District of California.

26      12.     Plaintiffs are informed and believe and thereon allege that Defendant
27  PARSON BRINCKERHOFF, INC. ("PARSONS") is a Delaware corporation with
28  its principal place of business in New York City, New York. PARSONS does

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1                4
                            **COMPLAINT**

1   business throughout the United States and in California, including the Central District
2   of California. At all relevant times Defendant PARSON BRINCKERHOFF, INC.
3   operated under a contract with FEMA to provide housing inspector personnel at any
4   and all national disaster sites in the United States and its territories, including the
5   Central District of California.

6          13.     Plaintiffs are informed and believe and thereon allege that Defendant
7   ALLTECH, INC. ("ALLTECH") is a Delaware corporation with its principal place
8   of business in New York City, New York, and that ALLTECH, INC. is a wholly-
9   owned subsidiary of Defendant PARSONS BRINCKERHOFF, INC. ALLTECH does
10  business throughout the United States and in California, including the Central District
11  of California. At all relevant times Defendant ALLTECH, INC. operated under a
12  contract with FEMA to provide housing inspector personnel at any and all national
13  disaster sites in the United States and its territories, including the Central District of
14  California.

15         14. On information and belief, at all times relevant herein, other entities,
16  employed plaintiffs and the class members as FEMA disaster housing inspectors and
17  are legally liable for the conduct alleged herein. All averments herein alleged against
18  the named defendants are also averred against these unknown entities.

19                    **CLASS ACTION ALLEGATIONS**

20

21         15.     The "PaRR Class"is defined as follows: all persons who are or were ever
22  employed by Defendants URS Corporation, DEWBERRY & DAVIS LLC, or
23  PARTNERSHIP FOR RESPONSE AND RECOVERY (PaRR) as a housing disaster
24  inspector to perform inspections in FEMA-declared disaster areas in the United States
25  and its territories during the period November 1, 2004 to the present.

26         16.     The "PARSONS Class" is defined as follows:  all persons who are or
27  were ever employed by Defendants PARSONS BRINCKERHOFF, INC. and
28  ALLTECH, INC. as a housing disaster inspector to perform inspections in FEMA-

@PFDcsktop\::ODMA/PCDOCS/ELLHMDM/294114/1                5
                                        **COMPLAINT**

declared disaster areas in the United States and its territories during the period November 1, 2004 to the present.

17.    The Fair Labor Standards Act, 29 U.S.C. 216(b), expressly provides that an action to collect overtime wages under the FSLA may be brought by any one or more employees for and in behalf of himself and other employees similarly situated. The statute further provides that no employee shall be a party plaintiff to any 216(b) collective action unless and until he gives his consent in writing to become such a party and such consent is filed with the Court. A FLSA 216(b) action is separate and distinct from a Rule 23 class action.

18.    Each Class alleged herein consists of thousands of Disaster Housing Inspectors. The class members are easily ascertainable from the list of inspectors maintained by the Defendants. The claims of the named plaintiff class representatives herein are typical of the claims made by the class members, i.e. claims for failure to pay overtime wages based upon a mis-classification of FEMA disaster housing inspectors as independent contractors rather than employees pursuant to company policy to pay FEMA disaster housing inspectors as independent contractors. The questions of law and fact are common to all class members and predominate over any individual issues. The predominate questions of law and fact center upon the correctness of classifying FEMA disaster housing inspectors as independent contractors rather than employees where the manner of inspection and degree of employer control is practically identical under FEMA disaster housing inspection mandatory inspection policy and procedure. Counsel for the Classes are experienced in the prosecution of class and representative actions, and have the means and incentive to pursue this matter earnestly on behalf of the named Plaintiffs and the class members.

19.    At all relevant times Plaintiff RONALD HOUSTON was employed by Defendants URS CORPORATION, DEWBERRY & DAVIS LLC, PARTNERSHIP FOR RESPONSE & RECOVERY as a Disaster Housing Inspector at national disaster

1  sites in the United States and its territories.

2      20.   At all relevant times Plaintiff JOSEPH LOMASCOLO was employed by

3  Defendants PARSONS BRINCKERHOFF, INC. and ALLTECH, INC. as a Disaster

4  Housing Inspector at national disaster sites in the United States and its territories.

5  <u>**GENERAL ALLEGATIONS**</u>

6      **A.**   **Unlawful Activities of the PaRR Defendants**

7      21.   At all relevant times Defendants URS, DEWBERRY, and PaRR,

8  (hereinafter "Said PaRR Defendants") operated under a contract with FEMA to

9  provide housing inspector personnel at any and all national disaster sites in the United

10  States and its territories. The contract between FEMA and Said PaRR Defendants

11  details precise policy and procedures required by FEMA for the disaster housing

12  inspections conducted by the PaRR Defendants. Said PaRR Defendants in turn

13  detailed precise policy and procedure whereby its inspectors, including Plaintiff and

14  members of the PaRR Class, were to conduct and did conduct the disaster site

15  housing inspections. At all times relevant, Said PaRR Defendants exercised

16  substantial control over their housing inspectors, including Plaintiff and members of

17  the PaRR Class, in terms of how the inspections occurred. Said PaRR Defendants

18  were and are paid millions of dollars by FEMA for their disaster housing inspection

19  services.

20      22.   At all relevant times herein, Plaintiff RONALD HOUSTON was

21  employed by Said PaRR Defendants as an inspector to work on FEMA-related field

22  inspections.

23      23.   Plaintiff RONALD HOUSTON worked for Said PaRR Defendants as an

24  inspector on FEMA-related field inspections from the summer of 2003 through

25  October 2005.

26      24.   Each year Said PaRR Defendants and FEMA respond to numerous

27  disaster sites throughout the United States. For any disaster relief effort coordinated

28  by FEMA, Said PaRR Defendants deploy thousands of inspectors, including Plaintiff

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1       7

**COMPLAINT**

1   and members of the PaRR Class, to provide disaster inspection services to disaster
2   victims. In providing inspection services, inspectors, including Plaintiff and members
3   of the PaRR Class, work substantial overtime hours without overtime compensation,
4   as Said PaRR Defendants have, at all relevant times, designated their disaster housing
5   inspectors, including Plaintiff and members of the PaRR Class, as independent
6   contractors rather than employees. Notwithstanding the designation of disaster
7   housing inspectors as independent contractors, said inspectors are factually and
8   legally employees of Said PaRR Defendants.

9       25.   At all relevant times, said PaRR Defendants recruit individuals to
10  become inspectors, including Plaintiff and members of the PaRR Class, to work on
11  FEMA-related disaster projects. Many individuals so recruited have little or no prior
12  inspection experience, and little or no disaster training or experience. Said PaRR
13  Defendants provided the training necessary for its inspectors, including Plaintiff and
14  members of the PaRR Class, to properly conduct field inspections within the FEMA
15  disaster housing program. Said PaRR Defendants provided basic and advance
16  training, as well as online training modules. All inspectors must complete online
17  training and field workshops to qualify for assignment to a disaster site. Scores
18  received in training are used to evaluate inspectors for assignment to disaster sites.
19  Inspectors receive training initially, periodically, and on a daily basis through an
20  office review procedure.

21      26.   At all relevant times, Said PaRR Defendants authorized and paid for
22  inspectors' travel to disaster sites, briefs its inspectors at the disaster sites, and issues
23  field equipment and computers to inspectors to be used in the performance of their
24  inspections. Inspectors are expected to work a minimum of thirty days at a disaster
25  site, and are released from duty only when so authorized by Said PaRR Defendants'
26  field supervisors.

27      27.   Field computers are provided to inspectors by Said PaRR Defendants;
28  the computers have proprietary FEMA software including NEMIS ("National

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1          8

**COMPLAINT**

1  Emergency Management Information System") and ACE ("Automated Construction
2  Estimation"). This software automates the inspection process, eliminates inspector
3  discretion, and promotes uniformity. The software is designed with a number of pop-
4  up windows, tool bars, drop down menus and inspection screens to facilitate and
5  homogenize the inspection process. There are inspection screens for information
6  regarding registration, dwelling, real estate, personal property, needs, and post-
7  inspection. The inspectors input the required information into the PaRR-provided
8  computer on the forms thereon, and at the end of the day the inspectors are required
9  to and do wire/cable transfer said information to the PaRR defendants. Said PaRR
10 Defendants then review the inspection information so provided, and communicate
11 back to the inspector requesting corrected or additional information concerning the
12 subject inspection.

13      28.     Once deployed, inspectors are given specific inspections to be performed
14 on a daily basis. Said PaRR Defendants retain control over inspectors to insist that
15 precise protocols during inspections are followed, and retains control to exert
16 oversight, evaluation and re-inspection by supervisors. Defendants assign their
17 inspectors to certain geographic areas. Said PaRR Defendants direct inspectors to
18 plan their route to their inspections, to telephone FEMA relief applicants, travel to the
19 inspection, meet the applicant, perform automated paperwork related to the
20 application, inspect damages to the property, fill out the automated paperwork upon
21 completion, and transfer the information via wire/cable to PaRR/FEMA. Said PaRR
22 Defendants require that each inspection take thirty to forty-five minutes. Said PaRR
23 Defendants require the inspectors to work from sun-up to sun-down, and complete
24 up to sixteen inspections per day, and, after the last inspection, wire/cable all
25 inspection data to said Defendants and to call applicants to schedule the next day's
26 inspections. Said PaRR Defendants require their inspectors to be on-call at all times
27 while assigned to a disaster site inspection project.

28      29.     Said PaRR Defendants instruct its housing inspectors on professional

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1                9
**COMPLAINT**

1  and ethical behavior to be used during inspections including the manner in which they
2  are to conduct their inspections. Said PaRR Defendants require their inspectors to
3  sign a Code of Conduct & Ethics before commencing work as an inspector.

4      30.    Said PaRR Defendants supervise their inspectors directly and indirectly.
5  Said Defendants issue questionnaires to the disaster victims asking for an evaluation
6  of the inspector's work. Said PaRR Defendants also contact by telephone a
7  percentage of each inspector's applicants shortly after the inspection to monitor the
8  inspector's field performance.

9      31.    Said PaRR Defendants require inspectors to perform all inspection
10  services personally, and they are not authorized to hire assistants or other workers to
11  assist in the performance of the inspection services. Said PaRR Defendants require
12  this as a means of retaining control of the training of the inspectors and the manner
13  in which the inspections are carried out. Said PaRR Defendants assign supervisors
14  in the field to supervise inspectors. Each inspector is graded upon the quality of his
15  or her inspections; said grade has an affect on future inspection assignments and
16  bonus eligibility.

17      32.    Said PaRR Defendants require inspectors to call said Defendant several
18  times daily to listen to broadcast directives concerning the manner of performing
19  inspections, and discipline the inspectors if they do not.

20      33.    At all relevant times, Said PaRR Defendants require inspectors to wear
21  badges identifying themselves as PaRR Housing Inspectors under contract of FEMA.
22  Said PaRR Defendants also require a certain dress code for their inspectors, and are
23  given instructions on what to say to the pubic on off hours.

24      34    Inspectors working for Said PaRR Defendants have a total lack of
25  independence over setting their work hours, work crews and other details of their
26  inspection work. Said inspectors are required to work only on the disaster inspection
27  project assigned to him by Said PaRR Defendants. In fact, the demands made upon
28  the inspectors by Said PaRR Defendants make it practically impossible for them to

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1    10

**COMPLAINT**

23

1  offer services to other employers while on call during a disaster housing inspection

2  project.

3    35.    Said PaRR Defendants pay their inspectors a set fee for each inspection,

4  thus eliminating any opportunity to experience a profit or loss consistent with an

5  independent business.

6    36.    The inspector's investment in the overall disaster housing inspection

7  operation is disproportionately small when compared to Defendants' investment in

8  the business. PaRR inspectors invest very little in the business other than their time.

9  Said PaRR Defendants' business is principally FEMA inspection work as performed

10  by their employed inspectors.

11    37.    Said PaRR Defendants require their inspectors to work full-time and

12  exclusively for said Defendants during the project, and for at least thirty days

13  consecutively at the disaster site.

14    38.    The inspectors working for Said PaRR Defendants do not make any

15  independent judgments on the job site, but only execute the requirements set forth by

16  their employer for conducting inspections and reporting findings thereon. Their job

17  is to document information and transmit the information to Defendants.

18    39.    Plaintiff and members of the PaRR Class are economically dependent

19  upon Said PaRR Defendants during the time they work at a disaster site conducting

20  inspections. The nature of job takes the inspector to a non-domiciliary site away from

21  their residence for a period of at least thirty days where the inspectors are required to

22  devote full-time to their employers' task of conducting housing disaster inspections

23  for FEMA.

24    40.    Inspectors working for Said PaRR Defendants purchase little or no

25  equipment of their own for purposes of their job. They are provided with a company

26  computer and software, and a camera for purposes of their inspections.

27    41.    Said PaRR Defendants require their inspectors to complete inspections

28  within a certain number of hours after the inspection assignment is issued.

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1                   11

**COMPLAINT**

42. Said PaRR Defendants expressly reserve the right to terminate inspectors, including Plaintiffs and members of the PaRR Class, for a variety of reasons including job performance. Said Defendants reserve the right to release inspectors from the disaster project in the event that the inspector takes a day off. The inspectors are required to work holidays and weekends during the project. The inspectors have no right to turn down inspection assignments.

43. At each inspection site, the PaRR inspector inspects only those parts and characteristics of the subject property as per the direction and questions put to him/her by software on the computer supplied by the employer.

44. Said PaRR Defendants impose disincentives on inspectors that reduced payment for each inspection that was considered substandard or otherwise deficient as determined by FEMA, and eliminate the payment for any inspection rejected outright by FEMA.

45. At all times relevant, the PaRR inspector operated under the direction and control of said Defendants in the performance of the disaster inspection services. At no time were the inspectors free from direction and control over the performance of the disaster inspection services. At all relevant times, the inspector's employer had the right to direct the job and manner of performance.

46. At all relevant times, Plaintiff HOUSTON and the PaRR Class were not subject to any exemptions to the overtime provisions of the Fair Labor Standards Act, including but not limited to the professional, executive or administrative exemptions.

47. At all relevant times, Said PaRR Defendants knowingly mis-classified disaster housing inspectors, including Plaintiff and the PaRR Class, as independent contractors, and failed to pay overtime wages to Plaintiff and the PaRR Class in violation of the Fair Labor Standards Act.

48. At all relevant times, Said PaRR Defendants knowingly mis-classified disaster housing inspectors, including Plaintiff and the PaRR Class, as exempt, and failed to pay overtime wages to Plaintiff and the PaRR Class in violation of the Fair

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1     12

**COMPLAINT**

1 | Labor Standards Act.

2 | **B.    Unlawful Conduct of PARSONS and ALLTECH**

3 | 49.    Defendant PARSONS is one of the oldest engineering firms in the world,
4 | and provides consulting, planning, engineering, program management, and
5 | construction management services.  From 1994 to the present, PARSONS has
6 | contracted with FEMA to provide FEMA with inspection personnel and services for
7 | their disaster relief efforts.  PARSONS provides FEMA with disaster housing
8 | inspectors, including Plaintiffs, through its wholly-owned subsidiary, Defendant
9 | ALLTECH.

10 | 50.    At all relevant times Defendants PARSONS and ALLTECH operated
11 | under a contract with FEMA to provide housing inspector personnel at any and all
12 | national disaster sites in the United States and its territories.  The contract between
13 | FEMA and Defendants PARSONS and ALLTECH details precise policy and
14 | procedures required by FEMA for the disaster housing inspections.  Defendants
15 | PARSONS and ALLTECH in turn detailed precise policy and procedure whereby its
16 | inspectors, including Plaintiffs and the PARSONS Class, were to conduct and did
17 | conduct the disaster site housing inspections. Defendants PARSONS and ALLTECH
18 | exercise substantial control over their housing inspectors, including Plaintiffs and the
19 | PARSONS Class, in terms of how the inspections occurred.  Defendants PARSONS
20 | and ALLTECH are and were paid millions of dollars by FEMA for their disaster
21 | housing inspection services.

22 | 51.    At all relevant times herein, Plaintiff JOSEPH LOMASCOLO was
23 | employed by Defendants PARSONS and ALLTECH as an inspector to work on
24 | FEMA-related field inspections.

25 | 52.    Plaintiff JOSEPH LOMASCOLO worked for Defendants PARSONS and
26 | ALLTECH as an inspector on FEMA-related field inspections from 2004 to May
27 | 2007.

28 | 53.    Each year Defendants PARSONS and ALLTECH and FEMA respond

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1                    13
**COMPLAINT**

to numerous disaster sites throughout the United States. For any disaster relief effort coordinated by FEMA, Defendants PARSONS and ALLTECH deploy thousands of inspectors to provide disaster inspection services to disaster victims. In providing inspection services, inspectors work substantial overtime hours without overtime compensation, as Defendants PARSONS and ALLTECH, have, at all relevant times, designated their disaster housing inspectors as independent contractors rather than employees. Notwithstanding the designation of disaster housing inspectors as independent contractors, said inspectors are factually and legally employees of said Defendants.

54. At all relevant times, Defendants PARSONS and ALLTECH recruit individuals to become inspectors to work on FEMA-related disaster projects. Many individuals so recruited have little or no prior inspection experience, and little or no disaster training or experience. PARSONS and ALLTECH provide the training necessary for its inspectors to properly conduct field inspections within the FEMA disaster housing program at no cost to inspectors. Said Defendants provide basic and advance training, as well as online training modules. All inspectors must complete online training and field workshops to qualify for assignment to a disaster site. Scores received in training are used to evaluate inspectors for assignment to disaster sites. Inspectors receive training initially, periodically, and on a daily basis through an office review procedure.

55. At all relevant times, Defendants PARSONS and ALLTECH authorize and pay for inspectors' travel to disaster sites, briefs its inspectors, at the disaster sites, and issues field equipment and computers to be used in the performance of their inspections. Inspectors are expected to work a minimum of thirty days at a disaster site, and are released from duty only when so authorized by Defendant PARSONS and ALLTECH field supervisors.

56. Field computers are provided to inspectors by Defendants PARSONS and/or ALLTECH; said computers have proprietary FEMA software including

NEMIS ("National Emergency Management Information System") and ACE ("Automated Construction Estimation"). This software automates the inspection process, eliminates inspector discretion, and promotes uniformity. The software is designed with a number of pop-up windows, tool bars, drop down menus and inspection screens to facilitate and homogenize the inspection process. There are inspection screens for information regarding registration, dwelling, real estate, personal property, needs, and post-inspection. The inspectors input the required information into the PARSONS/ALLTECH-provided computer, and at the end of the day wire/cable transfer said information to PARSONS/ALLTECH. The inspectors input the required information into the PARSONS/ALLTECH computer on the forms thereon, and at the end of the day the inspectors are required to and do wire/cable transfer said information to the defendants. Said Defendants then review the inspection information so provided, and communicate back to the inspector requesting corrected or additional information concerning the subject inspection.

57.    Once deployed, inspectors are given specific inspections to be performed on a daily basis. Defendants retain the control over inspectors to insist that precise protocols during inspections are followed and retains control to exert oversight, evaluation and re-inspection by supervisors. Defendants assign their inspectors to certain geographic areas. Defendants direct inspectors to plan their route to their inspections, to telephone FEMA relief applicants, travel to the inspection, meet the applicant, perform automated paperwork related to the application, inspect damages to the property, fill out the automated paperwork upon completion, and transfer the information via wire/cable to PARSONS/ALLTECH/FEMA. Defendants PARSONS and ALLTECH requires that each inspection take thirty to forty-five minutes. Defendants PARSONS and ALLTECH require the inspectors to work from sun-up to sun-down and complete up to sixteen inspections per day, and after the last inspection, wire/cable all inspection data to said Defendants and to call applicants to schedule the next day's inspections. Said Defendants require their inspectors to be on-

**COMPLAINT**

28

1  call at all times while assigned to a disaster site inspection project.

2      58.    Defendants PARSONS and ALLTECH instruct its housing inspectors
3  on professional and ethical behavior to be used during inspections including the
4  manner in which they are to conduct their inspections. Said Defendants require their
5  inspectors to sign a Code of Conduct & Ethics before commencing work as an
6  inspector.

7      59.    Defendants PARSONS and ALLTECH supervise their inspectors
8  directly and indirectly. Said Defendants issue questionnaires to the disaster victims
9  asking for an evaluation of the inspector's work. Said Defendants also contact by
10 telephone a percentage of each inspector's applicants shortly after the inspection to
11 monitor the inspector's field performance.

12     60.    Defendants PARSONS and ALLTECH require inspectors to perform all
13 inspection services personally, and they are not authorized to hire assistants or other
14 workers to assist in the performance of the inspection services: Said Defendants
15 require this as a means of retaining control of the training of the inspectors and the
16 manner in which the inspections are carried out. Defendants PARSONS and
17 ALLTECH assign supervisors in the field to supervise inspectors. Each inspector is
18 graded upon the quality of his or her inspections; said grade has an affect on future
19 inspection assignments and bonus eligibility.

20     61.    Defendants PARSONS and ALLTECH require inspectors to call said
21 Defendants several times daily to listen to broadcast directives concerning the manner
22 of performing inspections, and discipline the inspectors if they do not.

23     62.    At all relevant times, Defendants PARSONS and ALLTECH require
24 inspectors to wear badges identifying themselves as PARSONS/ALLTECH Housing
25 Inspectors under contract of FEMA. Said Defendants also require certain dress code
26 for their inspectors, and are given instructions on what to say to the pubic on off
27 hours.

28     63.    Inspectors working for Defendants PARSONS and ALLTECH have a

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/2941 14/1          16
**COMPLAINT**

total lack of independence over setting their work hours, work crews and other details of their inspection work. Said inspectors are required to work only on the disaster inspection project at hand and not offer services to third parties while the project is ongoing. In fact, the demands made upon the inspectors by Defendants PARSONS and ALLTECH make it practically impossible for them to offer services to other employers while on call during a disaster housing inspection project.

64.     Defendants PARSONS and ALLTECH pay their inspectors a set fee for each inspection, thus eliminating any opportunity to experience a profit or loss consistent with an independent business.

65.     The inspector's investment in the overall disaster housing inspection operation is disproportionately small when compared to Defendants' investment in the business. PARSONS/ALLTECH inspectors invest very little in the business other than their time. Said Defendants' business is principally FEMA inspection work as performed by their employed inspectors.

66.     Defendants PARSONS and ALLTECH require their inspectors to work full-time and exclusively for said Defendants during the project, and for at least thirty days consecutively at the disaster site.

67.     The inspectors working for Defendants PARSONS and ALLTECH do not make any independent judgments on the job site, but only execute the requirements set forth by their employer for conducting inspections and reporting findings thereon. Their job is to document information and transmit the information to Defendants.

68.     Plaintiff and members of the PARSONS Class are economically dependent upon Defendants PARSONS and ALLTECH during the time they work at a disaster site conducting inspections. The nature of job takes the inspector to a non-domiciliary site away from their residence for a period of at least thirty days where the inspectors are required to devote full-time to their employers' task of conducting housing disaster inspections for FEMA.

**COMPLAINT**

69.     Inspectors working for Defendants PARSONS and ALLTECH purchased little or no equipment of their own for purposes of their job. They are provided with a company computer and software, and a camera for purposes of their inspections.

70.     Defendants PARSONS and ALLTECH require their inspectors to complete inspections within a certain number of hours after the inspection assignment is issued.

71.     Defendants PARSONS and ALLTECH expressly reserve the right to terminate inspectors for a variety of reasons including job performance. Said Defendants reserve the right to release inspectors from the disaster project in the event that the inspector takes a day off. The inspectors are required to work holidays and weekends during the project. The inspectors have no right to turn down inspection assignments.

72.     At each inspection site, the PARSONS/ALLTECH inspector inspects only those parts and characteristics of the subject property as per the direction and questions put to him/her by software on the computer supplied by the employer.

73.     Defendants PARSONS and ALLTECH impose disincentives on inspectors that reduced payment for each inspection that was considered substandard or otherwise deficient as determined by FEMA, and eliminate the payment for any inspection rejected outright by FEMA.

74.     At all times relevant, the PARSONS/ALLTECH inspector operated under the direction and control of said Defendants in the performance of the disaster inspection services. At no time were the inspectors free from direction and control over the performance of the disaster inspection services. At all relevant times, the inspector's employer had the right to direct the job and manner of performance.

75.     At all relevant times, Plaintiff and the members of the PARSONS Class were not subject to any exemptions to the overtime provisions of the Fair Labor Standards Act, including but not limited to the professional, executive or

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/29411 14/1                    18
**COMPLAINT**

1  administrative exemptions.

2      76.    At all relevant times, Defendants PARSONS and ALLTECH knowingly
3  misclassified disaster housing inspectors, including Plaintiff and the members of the
4  PARSONS Class, as independent contractors, and failed to pay overtime wages to
5  Plaintiff and members of the PARSONS Class in violation of the Fair Labor
6  Standards Act.

7      77.    At all relevant times, Defendants PARSONS and ALLTECH knowingly
8  misclassified disaster housing inspectors, including Plaintiff and members of the
9  PARSONS Class, as exempt, and failed to pay overtime wages to Plaintiff and
10 members of the PARSONS Class in violation of the Fair Labor Standards Act.

11                          **FIRST CAUSE OF ACTION**

12  **(Violation of FLSA 29 U.S.C. 201 et seq. For Unpaid Overtime Wages By
     Plaintiff Ronald Houston and The PaRR Class Against
13                Defendants URS, DEWBERRY & PaRR)**

14      78.    Plaintiff, individually and behalf of all employees similarly situated
15
    constituting the PaRR Class, refers to and incorporates herein by this reference all
16
    preceding paragraphs as though fully set forth herein.
17
        79.    Plaintiff HOUSTON and members of the PaRR Class were at all relevant
18
    times employees of Defendants PaRR, URS and DEWBERRY, and have a right to
19
    recovery under the Fair Labor Standards Act, 29 U.S.C. 207(a)(1) for unpaid overtime
20
    wages.
21
        80.    Plaintiff HOUSTON and members of the Class have a right to recovery
22
    under the Fair Labor Standards Act, 29 U.S.C. 207(a)(1) for unpaid overtime wages
23
    owed for hours worked in excess of forty hours per week in which compensation was
24
    based upon the number of hours worked each week, but where Plaintiff HOUSTON
25
    and members of the Class were not paid an amount equal to one and one-half times
26
    their normal hourly rate for all hours worked in excess of forth hours per week.
27
    Plaintiff HOUSTON and members of the Class were not independent contractors,
28

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1          19
                                     COMPLAINT

and were not subject to the professional, executive or administrative exemptions to the overtime provisions of the FLSA because they were not paid on a "salary basis" as that term is defined in 29 C.F.R. 541.118. No other exemption to the overtime provisions of the FLSA applies to these individuals.

81. Plaintiff HOUSTON and members of the Class are "similarly situated" because the manner in which they were was paid (based on a set amount per inspection with no minimum "salary") was the result of a single decision, policy or plea or plan on the part of Defendants PaRR, URS and DEWBERRY, there are no apparent individual defenses to these claims, and the fairness and procedural aspects of these claims dictated a broad scale approach. A § 216(b) action is appropriate insofar as it lowers costs to Plaintiff HOUSTON and members of the Class through the pooling of resources, and limits the controversy to one proceeding which efficiently resolves common issues of law and fact that arouse from the same alleged activity.

82. Plaintiff HOUSTON and members of the Class are disaster housing inspectors who worked for Defendants PaRR, URS and DEWBERRY on an as needed basis dependent on the occurrence of disasters in the United States. Plaintiff HOUSTON and members of the Class was employed within three years of the date of the filing of the Complaint in this matter. Plaintiff HOUSTON and members of the Class were paid on a per inspection basis and was not paid overtime wages for hours worked in excess of 40 hours per week in violation of § 207(a) of the FLSA (29 U.S.C. 207(a)).

83. Plaintiff HOUSTON and members of the Class are informed and believes and thereon alleges that Defendants PaRR, URS and DEWBERRY knew or should have known that their disaster housing inspectors, including Plaintiffs, were not independent contractors, and did not qualify as exempt employees and purposely elected not to pay him for overtime labor

84. The failure by Defendants PaRR, URS and DEWBERRY to pay Plaintiff

33

HOUSTON and members of the Class overtime wages constituted a "willful violation" of the overtime provisions of the FLSA and therefore his claim is timely under 29 U.S.C. 255 of the "Port-to-Portal Pay Act." For purposes of this cause of action, Plaintiff Houston and the PaRR Class seek recovery of damages sustained within three years of the filing of this Complaint.

85.   Pursuant to 29 U.S.C. 216(b), Defendants PaRR, URS and DEWBERRY owe Plaintiff HOUSTON and members of the PaRR Class unpaid overtime wages, liquidated damages in an amount equal to overtime wages, attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**(By Plaintiff Ronald Houston and the PaRR Class For Preliminary and Permanent Injunction and Other Equitable Relief Against Defendants URS, DEWBERRY, and PaRR)**

86.   Plaintiff HOUSTON, individually and on behalf of each employee similarly situated, refers to and incorporates herein by reference all preceding paragraphs as though fully set forth herein.

87.   Plaintiff HOUSTON and members of the Class allege that if Defendants PaRR, URS and DEWBERRY are not enjoined from the conduct set forth herein above, they will continue to wrongfully classify disaster housing inspectors, including Plaintiff HOUSTON and members of the Class , as independent contractors, and continue to fail to pay overtime wages to disaster housing inspectors who did not and do not meet the statutory and regulatory exemption requirements.  In addition, Defendants PaRR, URS and DEWBERRY will continue to avoid paying the appropriate taxes, insurance, and unemployment holdings.

88.   Plaintiff HOUSTON and members of the Class request that the Court issue a preliminary and permanent injunction prohibiting Defendants PaRR, URS and DEWBERRY from misclassifying disaster housing inspectors and requiring Defendants to classify disaster housing inspectors as employees, and requiring

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1                    21

**COMPLAINT**

34

Defendants to pay Plaintiff and the members of the Class overtime wages for time worked in excess of 40 hours per week.

### THIRD CAUSE OF ACTION

**(Violation of FLSA 29 U.S.C. 201 et seq. For Unpaid Overtime Wages By Plaintiff Joseph Lomascolo and the Parsons Class Against Defendants Parsons and Alltech)**

89.　Plaintiff, individually and behalf of all employees similarly situated, refers to and incorporates herein by this reference all preceding paragraphs as though fully set forth herein.

90.　Plaintiff and members of the Class are employees of Defendants PARSONS and ALLTECH and have a right to recovery under the Fair Labor Standards Act, 29 U.S.C. 207(a)(1) for unpaid overtime wages.

91.　Plaintiff and members of the Class have a right to recovery under the Fair Labor Standards Act, 29 U.S.C. 207(a)(1) for unpaid overtime wages owed to the Plaintiff and members of the Class  for hours worked in excess of forty hours per week in which compensation was based upon the number of hours that they worked each week, but they were not paid an amount equal to one and one-half times their normal hourly rate for all hours worked in excess of forth hours per week.  Plaintiff and members of the Class were not an independent contractors, and were not subject to the professional, executive or administrative exemptions to the overtime provisions of the FLSA because they were not paid on a "salary basis" as that term is defined in 29 C.F.R. 541.118.  No other exemption to the overtime provisions of the FLSA applies to the Plaintiff and members of the Class.

92.　Plaintiff and members of the Class are "similarly situated" because the manner in which they were paid (based on a set amount per inspection with no minimum "salary") and as an independent contractor rather than an employee, was the result of a single decision, policy or plan on the part of Defendants PARSONS and ALLTECH , there are no apparent individual defenses to these claims, and the fairness and procedural aspects of these claims dictated a broad scale approach.  A

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1　　22

**COMPLAINT**

1  § 216(b) collective action is appropriate insofar as it lowers costs to the Plaintiff and

2  members of the Class through the pooling of resources, and limits the controversy

3  to one proceeding which efficiently resolves common issues of law and fact that

4  arouse from the same alleged activity.

5  93. Plaintiff and members of the Class are disaster housing inspectors who

6  worked for Defendants PARSONS and ALLTECH on an as needed basis dependent

7  on the occurrence of disasters in the United States. Plaintiff and members of the

8  Class were employed within three years of the date of the filing of the Complaint in

9  this matter. Plaintiff and members of the Class were paid on a per inspection basis

10  as an independent contractor and not as an employee, and were not paid overtime

11  wages for hours worked in excess of 40 hours per week in violation of § 207(a) of the

12  FLSA (29 U.S.C. 207(a)).

13  94. Plaintiff and members of the Class are informed and believes and thereon

14  allege that Defendants PARSONS and ALLTECH knew or should have known that

15  their disaster housing inspectors, including Plaintiff and members of the Class, were

16  not independent contractors, and did not qualify as exempt employees and purposely

17  elected not to pay them for overtime labor.

18  95. Defendants PARSONS and ALLTECH's failure to pay Plaintiff and

19  members of the Class overtime wages constituted a "willful violation" of the overtime

20  provisions of the FLSA and therefore his claim is timely under 29 U.S.C. 255 of the

21  "Port-to-Portal Pay Act." Plaintiff and the Parsons Class seek recovery for damages

22  sustained within three years of filing this Complaint.

23  96. Pursuant to 29 U.S.C. 216(b), Defendants PARSONS and ALLTECH

24  owes Plaintiff and members of the Class unpaid overtime wages, liquidated damages

25  in an amount equal to overtime wages, attorneys' fees and costs.

26  //

27  //

28  //

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1                   23
                                                    **COMPLAINT**

## FOURTH CAUSE OF ACTION

**(By Plaintiff Joseph Lomascolo For Preliminary and Permanent Injunction and Other Equitable Relief Against Defendants Parsons and Alltech)**

97.     Plaintiff, individually and on behalf of each employee similarly situated, refers to and incorporates herein by reference all preceding paragraphs as though fully set forth herein.

98.     Plaintiff and members of the Class allege that if Defendants PARSONS and ALLTECH is not enjoined from the conduct set forth herein above, they will continue to wrongfully classify disaster housing inspectors, including Plaintiff and members of the Class, as independent contractors, and continue to fail to pay overtime wages to disaster housing inspectors, including Plaintiff and members of the Class, who did not and do not meet the statutory and regulatory exemption requirements. In addition, Defendants PARSONS and ALLTECH will continue to avoid paying the appropriate taxes, insurance, and unemployment holdings.

99.     Plaintiff and members of the Class request that the Court issue a preliminary and permanent injunction prohibiting Defendants PARSONS and ALLTECH from misclassifying disaster housing inspectors and requiring Defendants to classify disaster housing inspectors as employees, and requiring Defendants to pay Plaintiff and the members of the Class overtime wages for time worked in excess of 40 hours per week.

WHEREFORE, Plaintiffs, individually and on behalf of their similarly situated respective Classes, pray for judgment against all Defendants as follows:

**FIRST CAUSE OF ACTION**

1.     For an order certifying the "PaRR Class" as defined herein as a collective Class Action under the Fair Labor Standards Act, 29 U.S.C. § 216(b), and requiring that appropriate opt-in notice of this action be given;

2.     For general damages according to proof, including an amount equal to the overtime wages owed, plus an equal amount in liquidated damages as provided

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1                24

**COMPLAINT**

37

by 29 U.S.C. 216;

3.    For special damages according to proof, including an amount equal to the overtime wages owed, plus an equal amount in liquidated damages as provided by 29 U.S.C. 216;

4.    For prejudgment interest to the extent provided by law;

5.    For costs of suit;

6.    For reasonable attorneys' fees; and

7.    For such other relief as this Court may deem just and proper.

**SECOND CAUSE OF ACTION**

1.    For injunctive relief requested herein: Plaintiff HOUSTON and members of the Class request that the Court issue a preliminary and permanent injunction prohibiting Defendants PaRR, URS and DEWBERRY from misclassifying disaster housing inspectors as independent contractors, and requiring Defendants to classify disaster housing inspectors as employees, and requiring Defendants to pay its disaster housing inspectors overtime wages for time worked in excess of 40 hours per week.

2.    For prejudgment interest to the extent provided by law;

3.    For costs of suit;

4.    For reasonable attorneys' fees; and

5.    For such other relief as this Court may deem just and proper.

**THIRD CAUSE OF ACTION**

1.    For an order certifying the "PARSONS Class" as defined herein as a collective Class Action under the Fair Labor Standards Act, 29 U.S.C. § 216(b), and requiring that appropriate opt-in notice of this action be given;

2.    For general damages according to proof, including an amount equal to the overtime wages owed, plus an equal amount in liquidated damages as provided by 29 U.S.C. 216;

3.    For special damages according to proof, including an amount equal to

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/294114/1     25

**COMPLAINT**

the overtime wages owed, plus an equal amount in liquidated damages as provided by 29 U.S.C. 216;

4. For prejudgment interest to the extent provided by law;

5. For costs of suit;

6. For reasonable attorneys' fees; and

7. For such other relief as this Court may deem just and proper.

**FOURTH CAUSE OF ACTION**

1. For injunctive relief requested herein: Plaintiff LOMASCOLO and members of the Class request that the Court issue a preliminary and permanent injunction prohibiting Defendants PARSONS and ALLTECH from misclassifying disaster housing inspectors as independent contractors, and requiring Defendants to classify disaster housing inspectors as employees, and requiring Defendants to pay its disaster housing inspectors overtime wages for time worked in excess of 40 hours per week.

2. For prejudgment interest to the extent provided by law;

3. For costs of suit;

4. For reasonable attorneys' fees; and

5. For such other relief as this Court may deem just and proper.

DANZ & GERBER

DATED: November ___7___, 2007      ENGSTROM, LIPSCOMB & LACK

By: _____
WALTER J. LACK
RICHARD P. KINNAN
KARL GERBER
Attorneys for Plaintiffs and the
Classes

39

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of the Fair Labor Standards Act claims and any other claims so triable asserted in this Complaint.

DATED: November 7, 2007

DANZ & GERBER

ENGSTROM, LIPSCOMB & LACK

By: _____

WALTER J. LACK
RICHARD P. KINNAN
KARL GERBER
Attorneys for Plaintiffs and the
Classes

40

# EXHIBIT E

# **EXHIBIT E**

Parsons/Brinckerhoff
Two Three Year inspector count per state

| | Two Year Look Back | | | |
|---|---|---|---|---|
| State | No. of Insp in Residence | Percent of Total # Inspectors | Number of Insp. Completed | Percent of Total # Completed Work |
| TX | 588 | 26.0% | 162,345 | 23.1% |
| FL | 325 | 14.4% | 112,344 | 16.0% |
| MI | 151 | 6.7% | 51,307 | 7.3% |
| CA | 111 | 4.9% | 41,932 | 6.0% |
| LA | 106 | 4.7% | 39,462 | 5.6% |
| GA | 97 | 4.3% | 26,512 | 3.8% |
| PR | 82 | 3.6% | 20,114 | 2.9% |
| OH | 68 | | | |
| NC | 64 | | | |
| AL | 54 | | | |
| TN | 53 | | | |
| PA | 50 | | | |
| NY | 38 | | | |
| IN | 37 | | | |
| OR | 35 | | | |
| AZ | 32 | | | |
| CO | 30 | | | |
| WA | 27 | | | |
| MS | 23 | | | |
| AR | 21 | | | |
| IL | 21 | | | |
| MO | 21 | | | |
| OK | 19 | | | |
| SC | 19 | | | |
| VA | 19 | | | |
| NM | 17 | | | |
| KY | 14 | | | |
| WV | 14 | | | |
| ME | 13 | | | |
| NV | 13 | | | |
| NJ | 11 | | | |
| WI | 10 | | | |
| IA | 8 | | | |

| | Three Year Look Back | | | |
|---|---|---|---|---|
| State | No. of Insp in Residence | Percent of Total # Inspectors | Number of Insp. Completed | Percent of Total # Completed Work |
| TX | 645 | 24.3% | 253,092 | 20.6% |
| FL | 362 | 13.7% | 190,910 | 15.5% |
| MI | 168 | 5.3% | 88,173 | 7.2% |
| CA | 137 | 5.2% | 81,980 | 6.7% |
| LA | 119 | 4.5% | 55,481 | 4.5% |
| GA | 111 | 4.2% | 40,637 | 3.3% |
| PR | 91 | 3.4% | 44,666 | 3.6% |
| OH | 82 | | | |
| NC | 79 | | | |
| AL | 68 | | | |
| TN | 66 | | | |
| PA | 65 | | | |
| NY | 49 | | | |
| IN | 48 | | | |
| OR | 47 | | | |
| AZ | 40 | | | |
| CO | 39 | | | |
| WA | 33 | | | |
| MS | 31 | | | |
| AR | 31 | | | |
| IL | 27 | | | |
| MO | 26 | | | |
| OK | 25 | | | |
| SC | 25 | | | |
| VA | 24 | | | |
| NM | 20 | | | |
| KY | 19 | | | |
| NJ | 17 | | | |
| ME | 15 | | | |
| NV | 15 | | | |
| WV | 15 | | | |
| WI | 13 | | | |
| MN | 12 | | | |
| IA | 10 | | | |

41



Parsons/Brinckerhoff
Two Three Year inspector count per state

| | Total # Insp. | |
|---|---|---|
| ID | 8 | |
| UT | 7 | |
| VT | 6 | |
| KS | 5 | |
| MD | 5 | |
| MT | 4 | |
| CT | 4 | |
| HI | 4 | |
| NH | 3 | |
| NE | 3 | |
| DE | 2 | |
| ON | 2 | |
| SD | 1 | |
| MP | 1 | |
| RI | 1 | |
| WY | 1 | |
| 2,263 | 702,811 | |

| | Total # Insp. | |
|---|---|---|
| ID | 10 | |
| UT | 10 | |
| VT | 7 | |
| KS | 7 | |
| HI | 6 | |
| MD | 6 | |
| MT | 5 | |
| CT | 5 | |
| NH | 4 | |
| NE | 4 | |
| DE | 3 | |
| MA | 2 | |
| ON | 2 | |
| SD | 2 | |
| ND | 1 | |
| MP | 1 | |
| RI | 1 | |
| WY | 1 | |
| 2,651 | 1,231,033 | |

42