IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| RONALD HOUSTON, on behalf of himself and all other similarly situated, and JOSEPH LOMASCOLO, on behalf of himself and all others similarly situated, | : : : : : | |
| Plaintiff, | : : | |
| v. | : : | Case No.:  1:08-cv-203 |
| URS CORPORATION, et al., | : : | |
| Defendants. | : : | |

## PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF THIS CASE AS A "COLLECTIVE" ACTION UNDER THE FAIR LABOR STANDARDS ACT, 29 U.S.C. 216(b) AND MEMORANDUM OF POINTS AND AUTHORITIES

COME NOW Plaintiffs, RONALD E. HOUSTON and JOSEPH

LOMASCHOLO, by counsel and move this Court to enter an Order certifying this case

as a "Collective Action" under the Fair Labor Standards Act, 29 U.S.C. 216(b), and for

an Order requiring defendants to produce to plaintiffs the name and addresses of all

persons who were employed by defendants as Federal Disaster Housing Inspectors within

three (3) years of the date of said Order.

This Motion is made pursuant to 29 U.S.C. 216(b), which specifically provides

that action for unpaid overtime compensation brought under 29 U.S.C. 207, "may be

maintained against any employer...by one or more employees for and on behalf of

himself or themselves and other employees similarly situated." Such an action is known

as a "collective action".

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Richard P. Kinnan and the Exhibits attached thereto, the papers and records on file herein, and, upon such evidence as may be presented at the hearing of this matter.

## TABLE OF CONTENTS

Page

NOTICE OF MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2.      THIS FLSA OVERTIME COMPENSATION CASE SHOULD BE CERTIFIED
        AS A "COLLECTIVE ACTION" PURSUANT TO 29 U.S.C. 216(b). . . . . . . . . . . . . . 6

3.      PLAINTIFFS HAVE SUFFICIENTLY PLED AN EMPLOYEE RELATIONSHIP
        WITH DEFENDANTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.      Control. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        B.      Worker's Opportunity for Profit or Loss. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        C.      Worker's Investment in Business. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        D.      Permanence of Working Relationship. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        E.      Degree of Skill Required to Perform Work. . . . . . . . . . . . . . . . . . . . . . . . . 19

        F.      Extent to Which Work Is Integral Part of Alleged Employer's Business. . . . . . 20

        G.      Plaintiffs Depend Economically Upon Defendants' Business. . . . . . . . . . . . . . 20

V.      CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

Page(s)

*Baker v. Flint Engineering,*
137 F.3d 1436 (10th Cir. 1998)................................... 5, 14-16, 18-20

*Brock v. Superioro Care, Inc.,*
840 F.2d 1054 (2d Cir. 1988)................................................ 13

*Carter v. Duchess CMTY Coll.,*
735 F.2d 8 (12d Cir. 1984)............................................... 13, 14

*Dole v Snell,*
875 F.2d 802 (10th Cir. 1989)............................................... 15

*Gustafson v. Bell Atlantic Corporation,*
171 F.Supp.2d 311 (USDC S.D.N.Y. 2001)................................. 12-14

*Henderson v. Interchemco Co., Inc.,*
41 F.3d 567 (10th Cir. 1994)............................................. 14, 15

*Lee v. ABC Carpet,*
236 F.R.D. 193 (USDC S.D.N.Y. 2006).................................... 6-8

*McGuiggan v. CPC International, Inc.,*
84 F.Supp.2d 470 (S.D.N.Y. 2000)......................................... 13

*Nationwide Insurance Co. v. Darden,*
503 U.S. 318 (1992)...................................................... 14

*Parker v. Rowland Express, Inc.,*
492 F.Supp.1159 (USDC Minn. 2007)....................................... 8

*United States v. Silk,*
331 U.S. 704 (1947)...................................................... 13

*Villanueva v. Trugreen Limited Partners,*
479 F.Supp.2d 411 (USDC Delaware 2007)................................. 11

*Watson v. Graves,*
909 F.2d 549 (5th Cir. 1990)............................................. 15

## STATUTES

Page(s)

29 U.S.C. § 203(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. § 203(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. § 207. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

29 U.S.C. § 207(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

29 U.S.C. § 216(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 2, 6, 9, *passim*

29 USCA § 216(b).6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

29 USC §§ 207(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.    INTRODUCTION

This is a "wage and hour" employment case brought under the Fair Labor Standards Act
(FLSA) to collect unpaid overtime wages. ( 29 USC §§ 207(a) and 216(b)).  Plaintiffs are federal
disaster housing inspectors who were mis-classified by defendants as independent contractors, rather
than employees, and denied overtime compensation.  Pursuant to multi-million dollar contracts with
FEMA (Federal Emergency Management Agency), defendants hired workers to inspect residences
damaged in "disasters" declared by the President.  The program is part of FEMA's housing disaster
program which provides federal housing assistance to homeowners and renters following a disaster.
The housing inspectors were hired by defendants to fulfill long-term contractual commitments made
to FEMA by defendants to provide disaster housing inspectors at any and all Presidentially-declared
disaster sites.

The FLSA provides for a type of class action called a "collective action" where *similarly
situated* workers are permitted to join the action – opt-in to the action – upon receiving Court-
authorized notice following Court certification of the case as a FLSA collective action.  (29 U.S.C.
§ 216(b)). This Motion to certify a collective action is made pursuant to well-established law
(discussed below) which permits the Court to certify the case as a collective action (and order
defendants to produce the names and addresses of all similarly situated workers) based upon a
minimal showing that plaintiffs and the prospective class members were the victims of the same
allegedly unlawful employment policy or practice by the employer.  In this case, at all relevant times,
defendants treated all their federal disaster housing inspectors as independent contractors rather than

4

employees. In fact, Defendants required each inspector sign an independent contractor agreement.

The Internal Revenue Service recently reviewed the worker status of federal disaster housing inspectors employed by defendants and concluded that they are employees rather than independent contractors. (See, IRS Determination letters dated 12-6-06, 4-5-07, and, 8-1-07, attached as Exhibits 1, 2 and 3, to the Declaration of Richard P. Kinnan). The IRS Determination was based upon several factual findings, including employer control, no opportunity for the employee to incur a loss (or profit), minimal worker investment, a continuing worker-employer relationship, and, employee services which are an integral part of the employer's business. (See Exhibit 1 to Declaration of Richard P. Kinnan). These findings are all the substantive elements necessary to establish employee status. *See, Baker v. Flint Engineering*, 137 F.3d 1436 (10th Cir. 1998) (skilled rig welders hired on a project basis to assist in the construction of natural gas pipelines from wellheads to compressor stations held to be employees rather than independent contractors for purposes of FLSA overtime compensation.) Discovery in this case will similarly establish all the elements necessary for a legal determination that all FEMA housing inspectors were employees rather than independent contractors.

The Pennsylvania Department of Labor similarly found recently that plaintiff Joseph Lomascolo's worker status as a disaster housing inspector for defendant Alltech/PB was one of employee rather than independent contractor. (See Kinnan Declaration, Exhibit 4, 6/18/07 Unemployment Compensation Board of Review, Department of Labor, Commonwealth of Pennsylvania Referee's Decision/Order, and October 17, 2007 appellate decision upholding Referee's Decision/Order).

Over the past three years, hundreds (and perhaps thousands) of federal disaster inspectors have been employed by defendants and treated as independent contractors rather than employees. As specifically alleged in the Complaint, the nature of the job requires that housing inspectors necessarily work substantial overtime hours. (Complaint, ¶¶ 28, 41, 57 and 70, Exhibit 5 to Kinnan Declaration; see also, Inspector Declarations, ¶ 3, Exhibits 6 through 16 to Kinnan Declaration).

This case is perfectly suited for collective action status. For the reasons stated in this Memorandum, the Court is respectfully requested to certify this case as a FLSA collective action, and issue the appropriate Order requiring defendants to produce to the representative plaintiffs the names and addresses of all federal disaster housing inspectors employed by defendants within the past three years (so that notice may be sent to these workers advising them of their right to join the action).

2.   **THIS FLSA OVERTIME COMPENSATION CASE SHOULD BE CERTIFIED AS A "COLLECTIVE ACTION" PURSUANT TO 29 U.S.C. 216(b).**

In *Lee v. ABC Carpet*, 236 F.R.D. 193 (USDC S.D.N.Y. 2006), a carpet installer filed suit individually and on behalf of all other workers similarly situated to recover unpaid overtime wages under the Fair Labor Standards Act on the grounds that the defendant employer improperly classified its carpet installation mechanics as independent contractors rather than employees. Plaintiff moved to certify his claims under the FLSA as a collective action pursuant to FLSA § 216(b). The court granted plaintiff's motion to certify a collective action under the FLSA, and issued an order requiring defendant to disclose the names and addresses of any additional members of the putative class (for purposes of opt-in notice). With respect to certification, the *Lee* court stated as follows:

6

"Courts generally follow a two-step process when determining whether a matter should proceed as a collective action. The court first determines whether class members are similarly situated, based on pleadings and affidavits, and if the plaintiff meets the **minimal burden** of showing that the similarly situated requirement is met, a court certifies the class as a collective action. [Citations omitted]. Potential class members are then notified and provided with an opportunity to opt-in to the action." *Lee,* 236 F.R.D. at 197 (emphasis added).

In *Lee,* plaintiff argued that he and his fellow workers had been subject to defendant's centralized employment scheme, namely, defendant's mis-classification of them as independent contractors, and subsequent failure to compensate the employees in accordance with federal labor laws. The *Lee* court articulated the test for collective action certification as follows:

"Plaintiff may satisfy the similarly situated requirement by making a 'modest factual showing sufficient to demonstrate that he or she and potential plaintiffs together were victims of a common policy or plan that violated the law.' [Citations omitted]. ... To maintain a collective action under the FLSA, a named plaintiff 'bears the burden of showing that she is sufficiently 'similarly situated' to the opt-in plaintiffs such that the case may proceed as a collective action. The test is whether there is a 'factual nexus' between the claims of the named plaintiff and those who have chosen to opt-in to the action.'"

*Id.* at 197.

The *Lee* court concluded as follows:

> "[P]laintiff satisfied the 'similarly situated' requirement...by making
> a colorable claim that he and the potential plaintiffs, who are all
> carpet installation mechanics who worked for and/or are still
> employed by Defendants, are similarly situated. ... [V]iewing the
> totality of the circumstances, Plaintiff sufficiently alleged a common
> policy or plan of Defendants' failure to pay overtime wages, mis-
> classification as independent contractors rather than employees, and
> alleged a factual nexus between his circumstances and the
> circumstances of a number of identified individuals who are in the
> same position as the plaintiff. Therefore, the Court finds plaintiff has
> met the preliminary minimal 'similarly situated' burden requirement."

*Id.* at 198.

In *Parker v. Rowland Express, Inc.*, 492 F.Supp. 1159 (USDC Minn. 2007), plaintiff truck drivers sued defendant package delivery company for improperly classifying them as independent contractors rather than employees, and as a result denying them overtime compensation. Plaintiffs moved for an order certifying the case as a "collective action" under the FLSA so that they could notify other Rowland Express drivers of the pendency of the action and provide them with an opportunity to opt into the litigation. Defendant opposed the motion on the grounds that plaintiffs failed to demonstrate that others similarly situated individuals desired to opt into the litigation. The following passage from *Parker* is instructive:

8

"The FLSA provides that an action may be maintained 'by any...employee...for and on behalf of himself...and other employees similarly situated' to recover damages for the failure to pay overtime. 29 USC § 216(b). Such an action is known as a 'collective action.' [Citations omitted].

'No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought.' [Citations omitted]. Courts...facilitate this opt-in process by 'authorizing the named plaintiffs...to transmit a notice of the lawsuit to potential class members.' [Citation omitted].

For a district court to authorize such notice, the named plaintiffs must first show that they are 'similarly situated to the employees whom they seek to represent.' [Citations omitted]. ... [C]ourts generally follow a two-stage approach when deciding whether the named plaintiffs in a FLSA action are 'similarly situated' to other potential plaintiffs:

The first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision - - usually based only

9

on the pleadings and any affidavits which have been submitted - - whether notice of the action should be given to potential class members.

Because the court has minimal evidence, this determination is made using a fairly lenient standard, that typically results in 'conditional certification' of a representative class.  If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.'  The action then proceeds as a collective action throughout discovery.

Plaintiffs' burden at this [first] stage is not onerous. [Citations omitted].  '[M]ost courts agree that the standard is fairly lenient'... [and that the] burden at [the] first stage is 'not rigorous.... Ultimately, plaintiffs must come forward with at least some evidence indicating that this is an 'appropriate case' for collective-action status.

[T]he Eleventh Circuit held that a district court 'should satisfy itself that there are other employees...who desire to 'opt-in' before conditionally certifying a collective action.

10

> If, for example, eight employees together were to commence a FLSA
>
> action, it might be unnecessary to show that others desire to opt-in to
>
> the litigation, since the sheer number of plaintiffs, standing alone,
>
> could render the case 'appropriate' for collective action status."

The Court in *Villanueva v. Trugreen Limited Partners*, 479 F.Supp.2d 411, 415 (USDC

Delaware 2007), made the following observation with respect to certifying a FLSA collective action:

> "Courts differ in the level of proof required at the first stage. Some
>
> courts have found that 'substantial allegations that the putative class
>
> members were together the victims of a single decision, policy or
>
> plan' are sufficient; others have required some 'factual showing' that
>
> the 'similarly situated' requirement is satisfied. [Citations omitted]."

In this case, the fact that defendants classified all their federal disaster inspectors as

independent contractors rather than employees is not in dispute. (See Declarations of defendant

Alltech's Hugh Inglis, ¶ 5, and, defendant, PaRR's Douglas Frost, ¶ 7, attached to Kinnan

Declaration as Exhibits 17 and 18, respectively; see also, Housing Inspector Declarations attached

as Exhibits 6 through16 to Kinnan Declaration). As such, there is no dispute that the prospective

class members are similarly situated to the named representative plaintiffs who seek for themselves

and all similarly situated housing inspectors a finding that they were employees entitled to overtime

compensation under the FLSA. The Complaint outlines in detail the highly-controlled job of a

FEMA housing inspector, and the similar treatment of each such inspector by defendants. (See

Complaint, Exhibit 5 to Kinnan Declaration; see also, Housing Inspectors' Declarations, Exhibits

6 through 16  to Kinnan Declaration).  Under these circumstances, the "similarly situated"

11

requirement is sufficiently satisfied to allow for a FLSA collective action. The Court is respectfully requested to rule that this matter is suitable for certification as a class action under 29 U.S.C. 216(b), and to issue an Order requiring defendants to release the names and addresses of all federal disaster housing inspectors employed within the last three (3) years.

3.   **PLAINTIFFS HAVE SUFFICIENTLY PLED AN EMPLOYEE RELATIONSHIP WITH DEFENDANTS.**

In *Gustafson v. Bell Atlantic Corporation*, 171 F.Supp.2d 311 (USDC S.D.N.Y. 2001), plaintiff, a contract chauffeur, alleged that defendant company intentionally misclassified him as an independent contractor instead of an employee in order to deny him overtime. Plaintiff asserted claims under FLSA § 207(a) for unpaid overtime compensation. Plaintiff argued that by misclassifying him as an independent contractor, defendant failed to pay him overtime compensation as required by the FLSA. Plaintiff moved for summary judgment on the issue of his entitlement to overtime compensation as a common law employee. The court concluded that as a matter of law plaintiff was an employee of the company for FLSA purposes. The following passage from *Gustafson* is instructive regarding the determination of whether a worker is an employee for FLSA purposes:

> "In determining whether someone is an employee for FLSA purposes,
> a court employs the 'economic reality' test which considers: (1) the
> degree of the employer's control over the workers; (2) the worker's
> opportunity for profit or loss and his investment in the business; (3)
> the degree of skill and independent initiative required to perform the

12

work; (4) the permanence or duration of the working relationship;
and, (5) the extent to which the work is an integral part of the
employer's business. See, *Brock*, 840 F.2d at 1058-59 (citing *United
States v. Silk*, 331 U.S. 704 716 (1947); *McGuiggan v. CPC
International, Inc.*, 84 F.Supp.2d 470, 479 (S.D.N.Y. 2000). The test
is intended to be broad 'so that the provisions will have the widest
possible impact in the national economy.' *Carter v. Duchess CMTY
Coll.*, 735 F.2d 8, 12 (12d Cir. 1984).

No one factor in this common law [economic reality] test is
dispositive and 'the test is based on the totality of the circumstances.'
*Brock* 840 F.2d at 1059.  Furthermore, '[t]he ultimate concern is
whether, as a matter of economic reality, the workers depend upon
someone else's business for the opportunity to render service or are
in the business for themselves.'  *Id*; see also, *McGuiggan*, 84
F.Supp.2d at 479 ('in short, if the plaintiff was in business for
himself, he was not an employee; if he was economically dependent
on and within the direct control of the company, he was an
employee.'  Finally '[t]he existence and degree of each factor is a
question of fact while the legal conclusion to be drawn from those
facts - - whether workers are employees or independent contractors -
- is a question of law.'  *Brock*, 840 F.Supp. at 1059." *Gustafson*, 171

13

F. Supp 2d at 324.

The *Gustafson* court stated that control is the "crucial" factor. *Id.* at 325 (citing *Carter, supra,* 735 F.2d at 12).

In *Baker v. Flint Engineering*, 137 F.3d 1436, 1440 (10th Cir. 1998), the Court stated as follows:

> "The FLSA defines an employee as 'any individual employed by an
> employer.' 29 U.S.C. § 203(e)(1). In turn, 'employer' is defined as
> including 'any person acting directly or indirectly in the interest of an
> employer in relation to an employee. 29 U.S.C. § 203(d). The FLSA
> 'defines the verb 'employ' expansively to mean 'suffer or permit to
> work.' *Nationwide Insurance Co. v. Darden*, 503 U.S. 318, 326
> (1992) (quoting 29 U.S.C. § 203(g)). The Supreme Court has
> emphasized that the 'striking breadth of this latter definition'
> stretches the meaning of 'employee' to cover some parties who might
> not qualify as such under a strict application of traditional agency law
> principals.' *Id.* Thus, in determining whether an individual is
> covered by the FLSA, 'our inquiry is not limited by any contractual
> terminology or by traditional common law concepts of 'employee' or
> 'independent contractor.' *Henderson v. Interchemco Co., Inc.,* 41
> F.3d 567, 570 (10th Cir. 1994). Instead, the economic realities of the
> relationship govern, and 'the focal point is whether the individual is
> economically dependent on the business to which he renders

14

service...or is, as a matter of economic fact, in business for himself.'

*Id.* The economic reality test includes inquiries into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules and conditions of employment, determines the rate and method of payment and maintains employment records. *Watson v. Graves*, 909 F.2d 549, 553 (5th Cir. 1990)."

In finding that a group of part-time rig welders in the natural gas pipeline construction industry were employees for purposes of the FLSA and overtime compensation, the Court in *Baker, supra*, stated as follows:

'[A]s in *Dole v Snell*, 875 F.2d 802, (10th Cir. 1989), 'the record does not support any inference that these rig welders act autonomously, or with any degree of independence which would set them apart from what one would consider normal employee status.' 875 F.2d at 806. ... The record further indicates plaintiffs work on only one project at a time and do not offer services to third parties while a project is ongoing. Indeed, the hours plaintiffs are required to work on a project (ten to fourteen hours a day, six days a week), coupled with...often remote work sites,...makes it practically impossible for them to offer services to other employers. In short, very little about plaintiffs' work situation makes it possible to view plaintiffs as persons conducting their own businesses." *Baker*, 137 F.3d at 1441.

The *Baker* court further stated that "plaintiffs had no opportunity to experience a profit or loss consistent with the characteristics of being independent businessmen." *Id.* The *Baker* court further noted "that plaintiffs' investments are not so significant as to indicate they are independent contractors." *Id.* at 142. The *Baker* court further stated that "while rig workers are temporary workers, this finding is of little relevance in determining whether these plaintiffs are employees or independent contractors." *Id.* at 142. The court stated that "many seasonal businesses necessarily hire only seasonal employees, and that fact alone does not convert seasonal employees into seasonal independent contractors." *Id.*

### A.     **Control**

Similar to the Plaintiffs in *Baker*, Plaintiffs in this case are controlled by Defendants in nearly every aspect of their work as disaster inspectors. The Plaintiffs have no control as to when to report to work. The Defendants required the inspectors to work from sun-up to sun-down, and to complete as many inspections per day as possible. After all inspections are completed for the day, plaintiffs were required to wire/cable all inspection data to Defendants, and to call applicants to schedule the next day's inspections. (Complaint ¶¶ 28, 57).

Like Plaintiffs in the *Baker* case, the control exerted by Defendants made it practically impossible for plaintiffs to offer services to third parties while a project is ongoing. Plaintiffs were required to be on-call at all times while assigned to a disaster site inspection project. (Complaint ¶¶ 28, 57).    Plaintiffs were required to call in several times daily to listen to broadcast directives concerning the manner of performing inspections, and the inspectors are disciplined if they fail to call. (Complaint ¶¶ 32, 61). Inspectors were required to complete inspections within a certain

16

number of hours after the inspection assignment was issued. The inspectors were required to work holidays and weekends during the project, and had no right to turn down inspection assignments. (Complaint ¶¶ 42, 71). The Plaintiffs were expected to work a minimum of thirty days at a disaster site, and were released from duty only when authorized by Defendants' field supervisors. (Complaint ¶¶ 26, 55). The Plaintiffs were required to perform all inspection services personally; as such, they cannot hire assistants or other workers to perform the inspection services while they work on other projects. (Complaint ¶¶ 31, 60). Plaintiffs were required to work only on projects for Defendants, and Plaintiffs were not allowed to take assignments from other companies. (Complaint ¶¶37, 66).

The Plaintiffs in this case had even less control over the details of their work than the rig welders in the *Baker* case. The Plaintiffs in the instant case were recruited with little or no disaster training or experience. (Complaint ¶¶25, 54). The Defendants controlled all of the details of the Plaintiffs' work from insisting that precise protocols during inspections were followed, to the length of time each inspections should take, as well as the procedures to be followed after the inspection. (Complaint ¶¶ 28, 57). In completing their inspections, Plaintiffs were required to use employer-issued computers and software that eliminated inspector discretion, and promoted uniformity. (Complaint at ¶¶ 27,40, 56, & 69). The information inputted by the inspectors was wire-transferred to defendants. Defendants reviewed the inspection information and communicated back to the inspector requesting corrected or additional information concerning the inspection. (Complaint ¶¶ 28, 57). The Defendants also controlled the inspectors' behavior during inspections by making the inspectors sign a Code of Conduct & Ethics. (Complaint ¶¶ 29,58). Plaintiffs were also required to wear badges identifying themselves as PaRR or Alltech Housing Inspectors under contract of

FEMA.  (Complaint ¶¶ 33,62).  These facts evidence that the Plaintiffs had little control over the details of their work as inspectors.  Further, by requiring the inspectors to wear badges identifying themselves as PaRR or Alltech  Housing Inspectors, the employer defendants were representing to the public that the inspectors were under their control.

### B.    Worker's Opportunity for Profit or Loss

With respect to the worker's opportunity for profit or loss, the Court in *Baker* found that a fixed hourly rate afforded the worker no opportunity to experience a loss on the job site.   As in the *Baker* case, the plaintiffs do not necessarily share in the profits or direct success of the business.  The inspectors are paid a set fee for each inspection, and are limited in the number of inspections that can be done per day.  As such, there is no opportunity to experience a profit or loss consistent with an independent business.  (Complaint ¶¶ 28, 35, 57 & 64).

### C.    Worker's Investment in Business

The Court in the *Baker* case found that despite plaintiffs having substantial investments in their welding rigs, the rig welders' investment was disproportionately small when compared to the employer's investment in the overall business.  *Baker, supra* at 1442.  In reaching this conclusion, the Court stated that "[t]he investment 'is the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself.'(citation omitted). " *Id.*

Unlike the rig welders in the *Baker* case, the Plaintiffs have practically no investment in the business.  The inspectors were trained by the defendants.  (Complaint ¶¶ 25, 54).  The training consisted of online training and field workshops.  The inspectors received training initially, periodically and on a daily basis through an office review procedure.  (Complaint ¶¶ 25, 54).  The defendants pay for the inspectors' travel to disaster sites.  The defendants issued field equipment

including a computer with special disaster housing inspection software, and a camera.   (Complaint at ¶¶ 27,40, 56, & 69).

**D.      Permanence of Working Relationship**

Although the *Baker* court noted that the plaintiffs rarely worked for the employer Flint for more than two months at a time, the court concluded that the rig welders' relationship with Flint was actually, "'permanent and exclusive for the duration of' the particular job for which they are hired.'" (Citation omitted.)   *Id.* at 1442.

In this case, the inspectors are required to work only on the disaster inspection project assigned by the defendants.   The plaintiffs are also required to work for at least thirty days consecutively at the disaster site. (Complaint at ¶¶ 34, 37, 39, 55. 57 & 66).

**E.      Degree of Skill Required to Perform Work**

In rig welders case, the Court found that the plaintiffs were highly skilled, but did not make independent judgments on the job. The Court also noted that the independent contractors can usually negotiate pay, but that the employer Flint did not attempt to negotiate pay based upon a welder's skill or any other factor. *Baker* at 1443.   Further, the Court found that the plaintiffs did not exercise their discretion and judgment on the job.   Looking at all of these facts, the Court determined that the Plaintiffs were employees and not independent contractors despite their level of skill.   *Id.* at 1443.

The Plaintiffs in this case were recruited with little or no prior inspection experience.   The Plaintiffs received the necessary training from Defendants.   (Complaint at ¶¶ 25 & 54).   The inspectors exercised no discretion or independent judgment when inputting their inspection information as the software provided by Defendants automated the inspection process.   (Complaint at ¶¶ 26 & 56).   Under these circumstances, the inspection workers were more like employees than

19

independent contractors.

**F.      Extent to Which Work Is Integral Part of Alleged Employer's Business**

This factor looks at whether the workers' services are a necessary component of the Defendant's business. In the *Baker* case, the Court found that "the evidence . . . clearly indicates rig welders' work is an important, and indeed integral, component of oil and gas pipeline construction business." *Baker, supra,* at 1443.

Certainly the inspectors are an integral part of defendants' contracts with FEMA to provide housing inspector personnel. Defendants are paid millions of dollars by FEMA to provide disaster housing inspectors at any and all Presidentially-declared disasters in the United States and its territories. Defendants' FEMA work depends almost entirely upon its inspectors. The inspectors are thus an integral part of defendants' FEMA business.

**G.      Plaintiffs Depend Economically Upon Defendants' Business**

In the *Baker* case, the Court stated that a key factor is whether the workers are economically dependent upon the employer for the time period that they are working for that employer. The Court looked at whether the rig welders were "dependent upon Flint for the opportunity to render services for however long a particular project lasts." *Baker, supra,* at 144. The facts in this case clearly show that Plaintiffs were 100% economically dependent upon defendants for the duration of each disaster project.

**V.      CONCLUSION**

For all the above-said reasons, the Court is respectfully requested to grant plaintiffs' Motion for an Order certifying the case as a collective action under the Fair Labor Standards Act, 29 U.S.C. 216(b), and request for an Order directing defendants to produce to plaintiffs the names and

20

addresses of all federal disaster housing inspectors employed by defendants in the past three (3) years.

Respectfully submitted,

_____/s/_____

Gary Mims
Virginia Bar Number: 19184
*Counsel for Ronald Houston and Joseph Lomascolo*
HALL, SICKELS, FREI & MIMS, P.C.
12120 Sunset Hills Road, Ste. 150
Reston, VA 20190
Phone: (703) 925-0500
Fax:    (703) 925-0501
gary.mims@hallandsickels.com

-and-

Walter J. Lack, (California Bar Number: 57550, *Pro Hac Vice*)
(wlack@elllaw.com)
Richard P. Kinnan, (California Bar Number: 123170, *Pro Hac Vice*)
(rkinnan@elllaw.com)
ENGSTROM, LIPSCOMB & LACK
10100 Santa Monica Boulevard, 16th Floor
Los Angeles, CA 90067-4107
Phone: (310) 552-3800
Fax: (310) 552-9434

-and-

Karl Gerber (California Bar Number: 166003, *Pro Hac Vice pending*)
DANZ & GERBER
13418 Ventura Boulevard
Sherman Oaks, CA 91423
(kgerber86@earthlink.com)

*Counsel for Plaintiffs, Ronald E. Houston and Joseph Lomascolo*

## CERTIFICATE OF SERVICE

I hereby certify that on the __7th__ day of May, 2008, I will electronically file the foregoing

Plaintiffs' Motion for Order Certifying the Case as a Collective Action under the Fair Labor

Standards Act, 29 U.s.c. 216(b); Memorandum of Points and Authorities; Declaration of Richard P.

Kinnan; [Proposed] Order with the Clerk of the Court using the CM/ECF system, which will then

send a notification of such filing (NEF) to the following:

Kara Marie Ariail
JACKSON LEWIS LLP
*Local Counsel for Defendants, Parsons Brinckerhoff, Inc. and Alltech, Inc.*
8614 Westwood Center Dr., Ste. 950
Vienna, Virginia 22182
Tel: (703) 821-2189
Fax: (703) 821-2267
ariaik@jacksonlewis.com

Michael E. Kinney
Stacey L. Rose
HUNTON & WILLIAMS LLP
*Local Counsel for Defendants*
*URS Corporation, Dewberry & Davis LLC and Partnership for Response and Recovery*
1751 Pinnacle Drive
Suite 1700
McLean, Virginia 22102
Tel: (703) 714-7400
Fax: (703) 714-7410
mkinney@hunton.com
srose@hunton.com

And I hereby certify that I will mail the foregoing Motion for Order Certifying the Case by

U.S. Mail to the following non-filing users:

22

James P. Naughton
HUNTON & WILLIAMS LLP
*Local Counsel for Defendants*
*URS Corporation, Dewberry & Davis LLC and Partnership for Response and Recovery*
500 E. Main St., Ste. 1000
Norfolk, Virginia 23510
Tel: (757) 640-5300
Fax: (757) 625-7720

Paul J. Siegel
JACKSON LEWIS LLP
*Counsel for Defendants*
*Parsons Brinckerhoff, Inc. and Alltech, Inc.*
58 South Service Road, Ste. 410
Melville, New York 11747
Tel: (631) 247-0404
Fax: (631) 247-0417

JACKSON LEWIS LLP
*Local Counsel for Defendants, Parsons Brinckerhoff, Inc. and Alltech, Inc.*
8614 Westwood Center Dr., Ste. 950
Vienna, Virginia 22182
Tel: (703) 821-2189
Fax: (703) 821-2267

Walter J. Lack
Richard P. Kinnan
*Counsel for Plaintiffs*May 2, 2008
ENGSTROM, LIPSCOMB & LACK
10100 Santa Monica Boulevard, 16th Floor
Los Angeles, CA 90067-4107

23

Karl A. Gerber
Danz & Gerber
*Counsel for Plaintiffs*
13418 Ventura Blvd.
Sherman Oaks, CA 91423
Tel: (818) 783-7300
Fax: (818) 995-7159


                                                 /s/
                                        Gary Mims
                                        Virginia Bar Number: 19184
                                        *Counsel for Ronald Houston and Joseph Lomascolo*
                                        HALL, SICKELS, FREI & MIMS, P.C.
                                        12120 Sunset Hills Road, Ste. 150
                                        Reston, VA 20190
                                        Phone: (703) 925-0500
                                        Fax:    (703) 925-0501
                                        gary.mims@hallandsickels.com

24