IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

RONALD E. HOUSTON, et al.,

                Plaintiffs,

       vs.

URS CORPORATION, et al.,

             Defendants.

_____/

Civil Action No. 1:PO8cv0203 (LO/JFA)

| | |
|---|---|
| Hearing Date: | December 12, 2008 |
| Time: | 10:00 a.m. |
| Place: | Courtroom 601 |
| | 401 Courthouse Square |
| | Alexandria, Virginia |

Complaint File: 11/3/07
Trial Date:     None

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR ORDER CERTIFYING THE CASE AS A COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT, 29 U.S.C. 216(b)

Plaintiffs RONALD E. HOUSTON and JOSEPH LOMASCOLO hereby submit their Memorandum of Points and Authorities in Support of their Renewed Motion for Order Certifying the case as a Collective Action Under the Fair Labor Standards Act, 29 U.S.C. 216(b):

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 3

I.   INTRODUCTION ...................................................................................... 3

II.  BRIEF STATEMENT OF FACTS .................................................................. 10

III. THIS FLSA OVERTIME COMPENSATION CASE SHOULD BE
     CERTIFIED AS A "COLLECTIVE ACTION" PURSUANT TO
     29 U.S.C. 216(b). ................................................................................. 12

IV.  CONCLUSION ....................................................................................... 18

i

## TABLE OF AUTHORITIES

*Choimbol v. Fairfield Resorts, Inc.,*
    475 F.Supp.2d 557 (E.D. Virginia 2006) ........................................................................9

*Lee v. ABC Carpet,*
    236 F.R.D. 193 (USDC S.D.N.Y. 2006) .............................................................. 12-14

*Parker v. Rowland Express, Inc.,*
    492 F.Supp. 1159 (USDC Minn. 2007) .........................................................................14

*Villanueva v. Trugreen Limited Partners,*
    479 F.Supp.2d 411 (USDC Delaware 2007) .................................................................17

*Wirtz v. First St. Abstract & Inc. Co.,*
    362 F2d 83 (8th Cir. 1966) ..............................................................................................8

## STATUTES

29 U.S.C. 207 ................................................................................................................1

29 U.S.C. §§ 207(a) ....................................................................................................10

29 U.S.C. 216(b) ...............................................................................1, 3, 12, 17, 18, 20

F.R.C.P. 30(b)(6) ..........................................................................................................3

## I.   __INTRODUCTION__

On July 11, 2008 the Court heard argument on the parties' fully-briefed Motion for

Certification of a Collective Action under the Fair Labor Standards Act, 29 U.S.C. 216(b)

(overtime wages case).  At the July 11 hearing, the Court deferred its ruling on the motion and

ordered defendants to respond to plaintiffs' F.R.C.P. 30(b)(6) deposition notices by producing

the appropriate company representative(s) to answer questions concerning the precise nature of a

disaster inspector's job (to determine whether inspectors are sufficiently similarly situated to one

another to justify certification).  (See Exhibit 1 to Declaration of Richard P. Kinnan, Transcript

of July 11, 2008 hearing).  After months of red tape negotiations with the FEMA to get their

permission to allow these depositions to go forward (and to permit the production of documents

relevant to defendants' employment of disaster housing inspectors) (See Exhibit 2 to Declaration

of Richard P. Kinnan, September 10, 2008 correspondence with Office of Chief Counsel,

FEMA), on October 8, 2008 Plaintiffs took the depositions of Mr. David D. Frost, Defendant

PaRR's Senior Vice President, Federal Programs, who is the project director for PaRR's Federal

Disaster Housing Inspection Services Contract with FEMA, and Mr. Gregory Reynolds, who is

Defendant Alltech's Deputy Project Manager for the FEMA Disaster Housing Inspection

Contract.

Defendant PaRR's representitive, Mr. Frost, provided the following relevant information

concerning the inspector's job:

- FEMA issues specific inspection guidelines to PaRR for each federally declared
  disaster, and PaRR then distributes those guidelines to the inspectors to ensure

that the inspections are completed in accordance with the FEMA guidelines(Frost Deposition 20:1-10, Exhibit 3 to Declaration of Richard P. Kinnan);

- PaRR has a review process to ensure that a completed inspection complies with the FEMA guidelines (Frost Deposition 20:11-18, 33:7-11);

- PaRR provides standardized training and instruction both online and at various locations to its independent contractors in order to be able to implement the requirements of its disaster housing inspection contract with FEMA  (Frost Deposition 21:15-20);

- PaRR trains its inspectors on the information that is required by FEMA to be collected by inspectors (Frost Deposition 23:5-13);

- FEMA issues hand-held computers to PaRR to give to the inspectors and these computers are loaded with FEMA's proprietary data collection software (Frost Deposition 24:3-12);

- PaRR loads its own "error checking software" on the FEMA computers to ensure that everything was collected properly by the inspector in accordance with the FEMA guidelines (Frost Deposition 24:13-20, 27:19-22, 28:1).

- Summarized, the inspector goes out with the hand-held computer, completes the information required by the computer and complex software, and then forwards that information to FEMA (by electronic transfer) (Frost Deposition 27:13-18);

- PaRR's standardized inspection training includes **testing** to ensure the inspector has a certain level of appreciation for the inspection job (Frost Deposition 29:7-11);

- In addition to the site specific FEMA guidelines, FEMA issues overall guidelines for disaster housing inspections (Frost Deposition 30:3-8);

- PaRR expects all its inspectors to complete their inspections in accordance with the FEMA guidelines (Frost Deposition 31:13-16);

- PaRR provides its inspectors with government-owned and government-furnished hand-held portable computers and digital cameras to record the results of their inspections (Frost Deposition 35:2-6);

- PaRR issues phone-transmitted broadcasts to its inspectors to alert inspectors of various information, including any changes to the FEMA guidelines for conducting inspections (Frost 35:7-22, 36:1-22);

- FEMA requires PaRR and PaRR requires its inspectors to complete inspections within 72 hours of issuance of the inspection to the inspector (Frost Deposition 39:10-14);

- New inexperienced inspectors receive field assistance/training from PaRR: "There is a lot of initial review assistance that we provide the new inspectors...in the field" (Frost Deposition 40:17-22, 41:1-17);

- There are currently approximately 3,000 eligible PaRR inspectors (Frost Deposition 43:5-7, 44:11-13);

- PaRR asks its inspectors to commit to 30-day deployments when called to service a disaster (Frost Deposition 44:20-22, 45:1-2);

- PaRR expects its inspectors to complete and average of eight inspections per day (Frost Deposition 48:14-22, 49:1-2);

5

- FEMA has a guideline (which is a PaRR rule) that inspections may not be done after dark (Frost Deposition 52:3-9);

- New and seasoned inspectors must follow the same FEMA guidelines and inspection process for conducting inspections: the difference between the newbies and the seasoned inspectors is how fast they can do the inspection and how accurately they can do them (Frost Deposition 53:9-22, 54:1-19);

- All inspectors get paid the same per inspection regardless of experience and skill level (Frost Deposition 55:19-22, 56:1-4);

- **PaRR inspectors make all onsite inspection decisions in accordance with the guidelines issued by FEMA** (Frost Deposition 57:13-21);

- The inspection process is the same at any disaster in any given region, namely, collecting the data required to be collected by the FEMA guidelines (Frost Deposition 58:16-22, 59, 60:1-9, 64:10-20);

- PaRR inspectors are expected to average 56 inspections per week, 8 inspections per day for seven days a week (Frost Deposition 70:5-13, 71:20-22, 72:1-2);

- FEMA and PaRR have certain expectations concerning the inspectors' attire (Frost Deposition 72:6-22, 108:10-22);

- FEMA requires that certain information be collected during the inspection and PaRR is "there to pass on the guidelines, the basic requirements of the inspection down to the inspector."  (Frost Deposition 73:10-19);

- PaRR inspectors have a certain number of their inspections checked for compliance with FEMA guidelines and completeness (Frost Deposition 77:10-13);

- **The per inspection fee paid by PaRR to its inspectors includes compensation for anticipated overtime, "fairly substantial amount of overtime"**. (Frost Deposition 79:9-14, 80:3-7, 129:19-22, 130:1-6);

- The per inspection fee paid by PaRR to its inspectors include scheduling inspection appointments, traveling to the inspection, overtime, downloading, uploading, and doing the inspection.  (Frost Deposition 80:11-16);

- PaRR provides advanced training for its inspectors to better understand the FEMA guidelines applicable to inspections (Frost Deposition 116:19-22, 118:11-17);

- Plaintiff Ronald Houston was a top performer for PaRR, considered in the top 1% or 2% of PaRR inspectors, and selected to perform quality control on other inspectors (Frost Deposition 127:1-8, 21-22, 128:1-12, 131:7-11, 131:19-22, 132:1-2).

Defendant Alltech's representative, Gregory Reynolds, provided the following relevant information concerning the job of a national disaster housing inspector:

- Alltech disaster housing inspectors should follow the FEMA guidelines for performing inspections (Reynolds Deposition 19:6-18, 22:1-5, See Exhibit 4 to Declaration of Richard P. Kinnan, Gregory Reynolds Deposition);

- At each disaster site, Alltech gives each inspector a hard copy of FEMA's inspection guidelines (Gregory Reynolds Deposition 25:3-13);

- Alltech does review a percentage of inspections for purposes of quality control (Gregory Reynolds Deposition 44:8-18);

- Alltech asks the inspector to complete each inspection within 72 hours of issuance (Gregory Reynolds Deposition 46:1-5);

- Alltech requires its inspectors to sign a Code of Ethics (Gregory Reynolds Deposition 47:2-9);

- Alltech asks its inspectors for a 21-day deployment commitment (Gregory Reynolds Deposition 49:14-22, 50:1-2);

- Alltech does not keep track of the hours worked by their inspectors (Gregory Reynolds Deposition 38:15-17)[1];

- Alltech pays its inspectors a base rate of $50 per inspection (Gregory Reynolds Deposition 31:21-22, 32:6-7, 33:11-14);

- FEMA has a written rule that inspections should not be done after dark (Gregory Reynolds Deposition 22:12-22, 23:1-2).

In his Declaration submitted to this Court dated June 5, 2008, Defendant Alltech's Senior Vice President and Project Manager for the FEMA Disaster Housing Inspection contract, Hugh Inglis, stated that "**inspector makes all on-site inspection decisions in accordance with**

---

[1]Under FLSA, employers must keep accurate records of each employee's work week for a minimum of three years. If these records are incomplete or inadequate, the employee need only give a reasonable estimate of the hours he or she worked, in a declaration or deposition testimony, to state a FLSA claim. *Wirtz v. First St. Abstract & Inc. Co.*, 362 F2d 83, 88 (8th Cir. 1966).

8

**guidelines issued by FEMA,**" (See Exhibit 5 to Declaration of Richard P. Kinnan, Inglis Declaration ¶8).

As stated by veteran Alltech inspector, Everett Sharp, all Alltech inspectors follow the same rules, procedures and guidelines for conducting inspections, and the inspection job is a uniform process of collecting damage and ownership information with little or no discretion or independent judgment involved.  (See Exhibit 6 to Declaration of Richard P. Kinnan, Declaration of Everett Sharp).

In the recent case of *Choimbol v. Fairfield Resorts, Inc.*, 475 F.Supp.2d 557, 564 (E.D. Virginia 2006), the court stated that for purposes of collective action certification plaintiff's burden is to produce evidence that he and the potential class members *"were victims of a common policy or plan that violated the law."* (Emphasis added).  The *Choimbol* court further stated that a plaintiff seeking collective action certification must *"raise a similar legal issue as to...nonpayment of...overtime arising from at least manageably similar factual setting with respect to their job requirements and provisions, but their situations need not be identical." Id.* at 563 (Emphasis added).

**It is respectfully submitted that Plaintiffs and the prospective class members were similarly situated because they were all performing disaster housing inspections in strict accordance with the uniform FEMA guidelines that required all inspectors to fill out and submit to FEMA the same inspection forms using FEMA hand-held computers loaded with proprietary data collection software, and were all paid the same per inspection set fee, and, were all denied any overtime despite working more than 40 hours per week.**

With respect to the question of whether the disaster housing inspectors worked overtime, in addition to the previously submitted Declarations of plaintiffs and prospective plaintiffs stating that they regularly worked overtime while working as disaster housing inspectors (See Exhibit 7 to Declaration of Richard P. Kinnan), Defendant PaRR's Senior Vice President and Project Manager of the FEMA disaster housing inspection contract testified at his deposition that, **"[a] fairly substantial amount of overtime"** was calculated into the per inspection fee. (Frost Deposition, 129:19-22, 130:1-6, 29:9-14, Exhibit 3 to Declaration of Richard P. Kinnan, emphasis added).  Veteran inspector, Everett Sharp, states in his declaration that "in my experience, all diligent inspectors work on average from 7:00 a.m. to 10:00 p.m. seven days a week doing inspections, completing the necessary paperwork, completing the computer uploading, downloading, and data transferring, scheduling inspection appointments, and traveling to inspections, with one hour breaks for lunch and dinner".  (Declaration of Everett Sharp ¶5,  Exhibit 6 to Declaration of Richard P. Kinnan). On defendant PB/Alltech's website there is a relevant statement by Mr. Mike Rugless, the Project Manager of the FEMA disaster housing inspection contract: "Mike Rugless...has overseen more than one million inspections completed to date. 'This is unlike any other work PB does' [says Mr. Rugless]. The difference lies in the urgency of the moment. ...**[O]ur inspectors work long hours, around homeowner schedules, seven days a week to achieve our goals**.'" (See Exhibit 8 to Declaration of Richard P. Kinnan, October 2, 2008 printout of PB webpage, emphasis added).

In sum, as the evidence presented demonstrates, by all accounts the inspectors' job is uniform and strictly controlled by the FEMA guidelines and computer forms used to perform the

inspections and collect the necessary information. Also by all accounts, the deployed inspectors work regular overtime for which they are not paid.

## II.  <u>BRIEF STATEMENT OF FACTS</u>

This is a "wage and hour" employment case brought under the Fair Labor Standards Act (FLSA) to collect unpaid overtime wages. ( 29 USC §§ 207(a) and 216(b)).  Plaintiffs are federal disaster housing inspectors who were mis-classified by defendants as independent contractors, rather than employees, and denied overtime compensation.  Pursuant to multi-million dollar contracts with FEMA (Federal Emergency Management Agency), defendants hired workers to inspect residences damaged in "disasters" declared by the President.  The program is part of FEMA's housing disaster program which provides federal housing assistance to homeowners and renters following a disaster.  The housing inspectors were hired by defendants to fulfill long-term contractual commitments made to FEMA by defendants to provide disaster housing inspectors at any and all Presidentially-declared disaster sites.

The FLSA provides for a type of class action called a "collective action" where *similarly situated* workers are permitted to join the action – opt-in to the action – upon receiving Court-authorized notice following Court certification of the case as a FLSA collective action.  (29 U.S.C. § 216(b)). This Motion to certify a collective action is made pursuant to well-established law (discussed below) which permits the Court to certify the case as a collective action (and order defendants to produce the names and addresses of all similarly situated workers) based upon a minimal showing that plaintiffs and the prospective class members were the victims of the same allegedly unlawful employment policy or practice by the employer.  In this case, at all relevant times, defendants treated all their federal disaster housing inspectors as independent

contractors rather than employees.  In fact, Defendants required each inspector sign an independent contractor agreement.

Over the past three years, hundreds (and perhaps thousands) of federal disaster inspectors have been employed by defendants and treated as independent contractors rather than employees. As specifically alleged in the Complaint, the nature of the job requires that housing inspectors necessarily work substantial overtime hours.

This case is perfectly suited for collective action status.  For the reasons stated in this Memorandum, the Court is respectfully requested to certify this case as a FLSA collective action, and issue the appropriate Order requiring defendants to produce to the representative plaintiffs the names and addresses of all federal disaster housing inspectors employed by defendants within the past three years (so that notice may be sent to these workers advising them of their right to join the action).

## III.   THIS FLSA OVERTIME COMPENSATION CASE SHOULD BE CERTIFIED AS A "COLLECTIVE ACTION" PURSUANT TO 29 U.S.C. 216(b).

In *Lee v. ABC Carpet*, 236 F.R.D. 193 (USDC S.D.N.Y. 2006), a carpet installer filed suit individually and on behalf of all other workers similarly situated to recover unpaid overtime wages under the Fair Labor Standards Act on the grounds that the defendant employer improperly classified its carpet installation mechanics as independent contractors rather than employees.  Plaintiff moved to certify his claims under the FLSA as a collective action pursuant to FLSA § 216(b).  The court granted plaintiff's motion to certify a collective action under the FLSA, and issued an order requiring defendant to disclose the names and addresses of any

additional members of the putative class (for purposes of opt-in notice).  With respect to certification, the *Lee* court stated as follows:

> "Courts generally follow a two-step process when determining whether a matter should proceed as a collective action.  The court first determines whether class members are similarly situated, based on pleadings and affidavits, and if the plaintiff meets the **minimal burden** of showing that the similarly situated requirement is met, a court certifies the class as a collective action. [Citations omitted].  Potential class members are then notified and provided with an opportunity to opt-in to the action."  *Lee*, 236 F.R.D. at 197 (emphasis added).

In *Lee,* plaintiff argued that he and his fellow workers had been subject to defendant's centralized employment scheme, namely, defendant's mis-classification of them as independent contractors, and subsequent failure to compensate the employees in accordance with federal labor laws.  The *Lee* court articulated the test for collective action certification as follows:

> "Plaintiff may satisfy the similarly situated requirement by making a 'modest factual showing sufficient to demonstrate that he or she and potential plaintiffs together were victims of a common policy or plan that violated the law.' [Citations omitted].  ...  To maintain a collective action under the FLSA, a named plaintiff 'bears the burden of showing that she is sufficiently 'similarly situated' to the

opt-in plaintiffs such that the case may proceed as a collective action.  The test is whether there is a 'factual nexus' between the claims of the named plaintiff and those who have chosen to opt-in to the action.'"  *Id*. at 197.

The *Lee* court concluded as follows:

> "[P]laintiff satisfied the 'similarly situated' requirement...by making a colorable claim that he and the potential plaintiffs, who are all carpet installation mechanics who worked for and/or are still employed by Defendants, are similarly situated. ...  [V]iewing the totality of the circumstances, Plaintiff sufficiently alleged a common policy or plan of Defendants' failure to pay overtime wages, mis-classification as independent contractors rather than employees, and alleged a factual nexus between his circumstances and the circumstances of a number of identified individuals who are in the same position as the plaintiff.  Therefore, the Court finds plaintiff has met the preliminary minimal 'similarly situated' burden requirement."  *Id*. at 198.

In *Parker v. Rowland Express, Inc.*, 492 F.Supp. 1159 (USDC Minn. 2007), plaintiff truck drivers sued defendant package delivery company for improperly classifying them as independent contractors rather than employees, and as a result denying them overtime compensation.  Plaintiffs moved for an order certifying the case as a "collective action" under the FLSA so that they could notify other Rowland Express drivers of the pendency of the action and

14

provide them with an opportunity to opt into the litigation.  Defendant opposed the motion on the grounds that plaintiffs failed to demonstrate that others similarly situated individuals desired to opt into the litigation.  The following passage from *Parker* is instructive:

> "The FLSA provides that an action may be maintained 'by any...employee...for and on behalf of himself...and other employees similarly situated' to recover damages for the failure to pay overtime.  29 USC § 216(b).  Such an action is known as a 'collective action.'  [Citations omitted].
>
> 'No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought.'  [Citations omitted].  Courts...facilitate this opt-in process by 'authorizing the named plaintiffs...to transmit a notice of the lawsuit to potential class members.' [Citation omitted].
>
> For a district court to authorize such notice, the named plaintiffs must first show that they are 'similarly situated to the employees whom they seek to represent.' [Citations omitted].  ...  [C]ourts generally follow a two-stage approach when deciding whether the named plaintiffs in a FLSA action are 'similarly situated' to other potential plaintiffs:

The first determination is made at the so-called 'notice stage.'  At the notice stage, the district court makes a decision - - usually based only on the pleadings and any affidavits which have been submitted - - whether notice of the action should be given to potential class members.

Because the court has minimal evidence, this determination is made using a fairly lenient standard, that typically results in 'conditional certification' of a representative class.  If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.'  The action then proceeds as a collective action throughout discovery.


Plaintiffs' burden at this [first] stage is not onerous. [Citations omitted].  '[M]ost courts agree that the standard is fairly lenient'... [and that the] burden at [the] first stage is 'not rigorous.... Ultimately, plaintiffs must come forward with at least some evidence indicating that this is an 'appropriate case' for collective-action status.

[T]he Eleventh Circuit held that a district court 'should satisfy itself that there are other employees...who desire to 'opt-in' before conditionally certifying a collective action.

If, for example, eight employees together were to commence a FLSA action, it might be unnecessary to show that others desire to opt-in to the litigation, since the sheer number of plaintiffs, standing alone, could render the case 'appropriate' for collective action status."

The Court in *Villanueva v. Trugreen Limited Partners*, 479 F.Supp.2d 411, 415 (USDC Delaware 2007), made the following observation with respect to certifying a FLSA collective action:

"Courts differ in the level of proof required at the first stage. Some courts have found that 'substantial allegations that the putative class members were together the victims of a single decision, policy or plan' are sufficient; others have required some 'factual showing' that the 'similarly situated' requirement is satisfied. [Citations omitted]."

In this case, the fact that defendants classified all their federal disaster inspectors as independent contractors rather than employees is not in dispute. As such, there is no dispute that the prospective class members are similarly situated to the named representative plaintiffs who

17

seek for themselves and all similarly situated housing inspectors a finding that they were employees entitled to overtime compensation under the FLSA.  The testimony of defendants' representatives (and the testimony of plaintiffs and prospective plaintiffs) reveals the highly-controlled job of a FEMA housing inspector, and the similar treatment of each such inspector by defendants.  Under these circumstances, the "similarly situated" requirement is sufficiently satisfied to allow for a FLSA collective action.  The Court is respectfully requested to rule that this matter is suitable for certification as a class action under 29 U.S.C. 216(b), and to issue an Order requiring defendants to release the names and addresses of all federal disaster housing inspectors employed within the last three (3) years.

## IV.   **CONCLUSION**

For all the above-said reasons, the Court is respectfully requested to grant plaintiffs' Motion for an Order certifying the case as a collective action under the Fair Labor Standards Act, 29 U.S.C. 216(b), and request for an Order directing defendants to produce to plaintiffs the names and addresses of all federal disaster housing inspectors employed by defendants in the past three (3) years.

Respectfully submitted,

_____/s/_____
Gary B. Mims
Virginia Bar Number: 19184
*Counsel for Ronald Houston and Joseph*
*Lomascolo*
HALL, SICKELS, FREI & MIMS, P.C.
12120 Sunset Hills Road, Ste. 150
Reston, VA 20190
Phone: (703) 925-0500
Fax:     (703) 925-0501
gary.mims@hallandsickels.com

-and-

Walter J. Lack, (California Bar Number: 57550, *Pro Hac Vice*)
(wlack@elllaw.com)
Richard P. Kinnan, (California Bar Number: 123170, *Pro Hac Vice*)
(rkinnan@elllaw.com)
ENGSTROM, LIPSCOMB & LACK
10100 Santa Monica Boulevard, 16th Floor
Los Angeles, CA 90067-4107
Phone: (310) 552-3800
Fax: (310) 552-9434

-and-

Karl Gerber (California Bar Number: 166003, *Pro Hac Vice pending*)
DANZ & GERBER
13418 Ventura Boulevard
Sherman Oaks, CA 91423
(kgerber86@earthlink.com)
*Counsel for Plaintiffs, Ronald E. Houston and Joseph Lomascolo*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of November, 2008, I will electronically file

the foregoing Plaintiffs' Memorandum of Points and Authorities in Support of Renewed

Motion for Order Certifying the Case as a Collective Action under the Fair Labor

Standards Act, 29 U.S.C. 216(b); with the Clerk of the Court using the CM/ECF system,

which will then send a notification of such filing (NEF) to the following:

Andrew S. Cabana
Kara Marie Ariail
Teresa Burke Wright
Paul J. Siegel
Wendy J. Melik
Paul DeCamp
JACKSON LEWIS LLP
*Local Counsel for Defendants, Parsons Brinckerhoff, Inc. and Alltech, Inc.*
10701 Parkridge Blvd., Ste. 300
Reston, VA  20191
Tel: (703) 483-8300
Fax: (703) 483-8301
cabanaa@jacksonlewis.com
ariaik@jacksonlewis.com
wrightt@jacksonlewis.com
mellkw@jacksonlewis.com
decamp@jacksonlewis.com

Michael E. Kinney
Stacey L. Rose
HUNTON & WILLIAMS LLP
*Local Counsel for Defendants*
*URS Corporation, Dewberry & Davis LLC and Partnership for Response and Recovery*
1751 Pinnacle Drive
Suite 1700
McLean, Virginia 22102
Tel: (703) 714-7400
Fax: (703) 714-7410
mkinney@hunton.com
srose@hunton.com

And I hereby certify that I will mail the foregoing Renewed Motion for Order

Certifying the Case by U.S. Mail to the following non-filing users:

James P. Naughton
HUNTON & WILLIAMS LLP
*Local Counsel for Defendants*
*URS Corporation, Dewberry & Davis LLC and Partnership for Response and Recovery*
500 E. Main St., Ste. 1000
Norfolk, Virginia 23510
Tel: (757) 640-5300
Fax: (757) 625-7720

Stephen Michael Sayers
Thomas Patrick Murphy
Hunton & Williams
1751 Pinnacle Drive
Suite 1700
McLean, VA 22102

Walter J. Lack
Richard P. Kinnan
*Counsel for Plaintiffs*
ENGSTROM, LIPSCOMB & LACK
10100 Santa Monica Boulevard, 16th Floor
Los Angeles, CA 90067-4107

Karl A. Gerber
Danz & Gerber
*Counsel for Plaintiffs*
13418 Ventura Blvd.
Sherman Oaks, CA 91423
Tel: (818) 783-7300
Fax: (818) 995-7159

 

 

                                                 /s/
                               Gary Mims
Virginia Bar Number: 19184
*Counsel for Ronald Houston and Joseph Lomascolo*
HALL, SICKELS, FREI & MIMS, P.C.
12120 Sunset Hills Road, Ste. 150
Reston, VA 20190
Phone: (703) 925-0500
Fax:     (703) 925-0501
gary.mims@hallandsickels.com